## IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF FLORIDA

### PANAMA CITY DIVISION

| | | |
|---|---|---|
| A.L., by P.L.B., and | ) | |
| P.L.B. for herself | ) | |
| Plaintiffs | ) | Case No. 5:12-cv-299 RS-EMT |
| **vs.** | ) | |
| | ) | |
| Jackson County School Board, | ) | |
| Defendant | | |

### PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS

COMES NOW, Plaintiffs, and response to Defendant's Motion to Dismiss, as follows:

1.      "We review de novo the district court's grant of a motion to dismiss under 12(b)(6) for failure to state a claim, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff." *Hill v. White,* 321 F.3d 1334, 1335 (11th Cir.2003)  *M.T.V. v. Dekalb County School Dist.*, 446 F.3d 1153 (11th Cir., 2006)    The amended complaint does allege exhaustion or futility and there is a final order attached to the amended complaint which dismisses the claims raised.   Attached to this response is Plaintiffs' Amended Due Process Request that includes the facts and the claims JCSB denies have been exhausted.

2.      JCSB's argument that Plaintiff's Count I for Injunctive Relief, and Count II for Declaratory Relief must be dismissed because of failure to exhaust disregards

both the law and the facts.    The relevant Individuals with Disabilities Education

Act, 20 U.S.C. 1400 *et seq.* ("IDEA") section states that:

(l) Rule of Construction. Nothing in this title shall be construed to restrict or limit
the rights, procedures, and remedies available under the Constitution, the
Americans with Disabilities Act of 1990, [42 USC § 12101] title V of the
Rehabilitation Act of 1973, [29 USC § 790] or other Federal laws protecting the
rights of children with disabilities, **except that before the filing of a civil action
under such laws seeking relief that is also available under this part**, the
procedures under subsections (f) and (g) shall be exhausted to the same extent as
would be required had the action been brought under this part.  **Emphasis added.**

While Plaintiffs' amended due process request does not specifically ask

for either injunctive or declaratory relief, it does ask the ALJ to consider the facts

that underlie Plaintiffs' request for that relief.

Neither injunctive nor declaratory relief is available in an administrative

hearing.  The ALJ in dismissing the claims in the final order appealed in this case

said: "Thus, since the Division does not have injunctive authority, the only

remedies for a stay-put IEP, which no longer meets the educational needs of the

child, is for the parties to either agree to a change in placement or for one party to

seek a preliminary injunction. Wagner, supra." [Final Order DOAH 12-1273E,

p.6-7[1]]

---

[1] The ALJ on page 7 of that order cited *MP v. Leon County School Board* in DOAH 04-
517 for the proposition that "a school was under no obligation to amend or review an IEP that
was the subject of such litigation because when stay-put is in effect".  The federal judge granted
the student a preliminary injunction when the DOAH determination (dismissal for lack of
jurisdiction to grant injunction, same as this case) was appealed, in *MP2004 v. Leon County
School Board*, et al, NDFL Case 04-c-69-SPM, saying that, "...Nothing in the terms of the stay-
put provision requires the District to keep MP frozen in his 2002 IEP.  Under its plain terms, the
stay-put provision allows a school district or the state, with the consent of the parents, to make
changes to MP's IEP...." p.6 "...Given the limited progress MP made under previous IEPs in the
District, the passage of time since the 2002 IEP [this was April 2004] and the progress MP has

The Declaratory Relief requested concerns the First Amendment rights under the U.S. Constitution, and a Florida Statute which JCSB uses to deny Plaintiffs' IEP meetings, and make it harder for MOTHER to prove her claims in court, and to obstruct her ability to petition government for redress.  But the First Amendment rights that Plaintiffs' seek declaratory relief for go beyond interaction that is required by IDEA or other statutes designed to protect students with disabilities: Plaintiffs seek a declaration that the First Amendment allows them to record school district officials, employees and agents in the course of their performance of their public duties without their consent.  It is relief concerning a district policy refusing to allow recording by parents.   That is not relief offered under IDEA, and therefore is explicitly excluded from exhaustion.  Plaintiffs did raise the issue of whether the policy of refusing to allow Plaintiff to record was retaliatory under Section 504 in their amended due process complaint, paragraphs 29-32, and Issue 4.

The Eleventh Circuit has said that "[t]he exhaustion of ... remedies is not required where resort to administrative remedies would be (1) futile or (2) inadequate." *M.T.V. v. Dekalb County School Dist.*, 446 F.3d 1153, 1159 (11th Cir., 2006)  The Southern District of Florida determined that when the parent had alleged a blanket policy, it would be futile to require individual administrative

---

made since then, the 2002 IEP at this point in time does not appear reasonably calculated to provide educational benefit to MP.... [at the same time the court noted it was not expressing an opinion on whether it provided educational benefit in 2002.] p. 8

determinations that could be different. *L.M.P. ex rel. E.P. v. School Bd.*, 516

F.Supp.2d 1294, 1305 (S.D. Fla., 2007)

      None of the Eleventh Circuit key reasons for requiring exhaustion apply to

declaratory actions. "Key reasons for requiring the exhaustion of administrative

remedies are as follows: 1) to permit the exercise of agency discretion and

expertise on issues requiring these characteristics; 2) to allow the full

development of technical issues and a factual record prior to court review; 3) to

prevent deliberate disregard and circumvention of agency procedures established

by Congress; and 4) to avoid unnecessary judicial decisions by giving the agency

the first opportunity to correct any error. (Internal citation omitted.)... The

exhaustion requirement, however, is not jurisdictional and therefore " 'is not to be

applied inflexibly.' " (Internal citations omitted.) *N.B. by D.G. v. Alachua County

School Bd.,* 84 F.3d 1376, 1378-9 (C.A.11 (Fla.), 1996)

3.    JCSB's argument that Count III for Denial of FAPE Under IDEA, Count IV for

Section 504 Discrimination, Count V for Retaliation Under IDEA and Section

504 have not been exhausted, simply denies the facts[2]. The Count III-V claims in

this case were specifically raised in a amended due process request Plaintiffs filed

under IDEA on April 16, 2012 (see attached amended due process complaint,

page 1), and were dismissed for lack of jurisdiction in the Final Order appealed in

---

[2] It may also be moot, but plaintiffs' counsel has not had sufficient time to review the 191
page final order that the ALJ issued in DOAH 10-10485E on December 29, 2012.

this case (attached).   How JCSB fails to acknowledge this in its Motion to Dismiss is puzzling.

It is true that the ALJ's final order on the claims in the second due process case, dating after June 7, 2011 in DOAH 12-1273E does not specifically determine Plaintiffs' the second due process retaliation or discrimination claims: the ALJ said the claims were all wrapped up in the one meeting (which Plaintiffs dispute).  Plaintiffs' counsel memory is unsure whether that was because the ALJ orally dismissed them in the hearing which Plaintiffs was required to pay for court reporting for, and which has not been transcribed because Plaintiffs are indigent; or whether it is simply because the ALJ has already said in the earlier first due process case that she has no jurisdiction over Section 504 or ADA claims.  (See dismissal in first due process case, attached.)   But that doesn't change the fact that the issues were raised and the facts were alleged (to the level required in a due process request, which has minimum pleading requirements).   Plaintiffs cannot be penalized if DOAH dismisses the claims they brought.   (See related discussion *McNeal v. Duval County School Board*, 58 IDELR 7, 111 LRP 73952 (MDFL 2011).

The Individuals with Disabilities Education Act anticipates that a student's needs would change over time.  What might be free appropriate education at one point, may absolutely not be at a different point. That is why Congress requires that the student's Individual Education Program be updated "at least annually":

1414(d)(4) Review and Revision of IEP. (A) In General. The local educational agency shall ensure that, subject to subparagraph (B), the IEP Team– (i) reviews the child's IEP periodically, but not less frequently than annually to determine whether the annual goals for the child are being achieved; and (ii) revises the IEP as appropriate to address– (I) any lack of expected progress toward the annual goals and in the general education curriculum, where appropriate; (II) the results of any reevaluation conducted under this section; (III) information about the child provided to, or by, the parents, as described in subsection (c)(1)(B); (IV) the child's anticipated needs; or (V) other matters.  20 U.S.C. 1414(d)(4)(See also: "(2) At the beginning of each school year, each local educational agency, State educational agency, or other State agency, as the case may be, shall have in effect, for each child with a disability in theagency's jurisdiction, an individualized education program, as defined in paragraph (1)(A).  20 U.S.C. 1414(d)(2)

Congress also gave explicit permission that claims did not have to be all raised at one time: "Separate Complaint. Nothing in this section shall be construed to preclude a parent from filing a separate due process complaint on an issue separate from a due process complaint already filed."  20 U.S.C. 1415(o)

JCSB argues that the First Due Process must be finished before the court considers later claims, as though any decision in that case is dispositive for the new claims raised in this one.   That due process was filed in November 2010. The ALJ explicitly refused to consider even evidence that occurred after the date of filing except as to the student's progress: she surely refused to consider new claims arising after November 2010 filing.   The claims in this case (and the appealed due process hearing which began April 6, 2012) began on June 7, 2011, and continue today.   JCSB misrepresent that it is the November 2010 claims that are being considered in this case, or relevant to this case.    Further, Plaintiffs consented to only a single one week delay to that first hearing, and three days delay when Plaintiffs' counsel was unable to attend scheduled hearing dates due

to illness or unexpected travel emergencies.   Yet the hearing was not complete until April 2012, and the transcript was not filed until July 2012.   In *Radcliffe v. School Bd. of Hillsborough County*, 38 F.Supp.2d 994 (M.D. Fla., 1999), the Middle District of Florida cited the Second Circuit:  "[i]f state administrative bodies persistently fail to render expeditious decisions as to a child's educational placement, district courts have the power under § 1415(e)(2) to assume jurisdiction over the review process on the grounds that exhaustion would be futile or inadequate."  *Frutiger v. Hamilton Cent. Sch. Dist.*, 928 F.2d 68, 74 (2d Cir.1991)   That would make JCSB' argument that Plaintiffs had failed to exhaust as required plainly wrong, even if a court were to mistakenly conclude that (a) there is a requirement to wait beyond the 45 statutory deadline for the Division of Administrative Hearing to issue a final order, or (b) that Plaintiff's first due process is dispositive or even relevant to their claims that arose at least six months after the ones in that case.

JCSB  mentions in its motion that it brought a claim (that has been unclear to Plaintiffs since it was raised) about the recording issue.   Plaintiffs found it very strange that after successfully urging the ALJ to dismiss Plaintiffs' claims about retaliation that included denying MOTHER permission to record meetings after she engaged in protected activities, that she was permitted to record before having done so; and without ever having adopted any rule prohibiting recording; JCSB filed a due process claim against Plaintiffs apparently seeking DOAH's approval for its refusal to hold statutory meetings under IDEA if Mother recorded, and

refusal to allow her to record, in the third due process (DOAH 12-2562E).  It

made no sense since how can an ALJ determine whether free appropriate public

education has been denied, or IDEA procedures have been violated by the

recording, when JCSB did not identify any specific instances in its complaint.   In

a un-transcribed hearing, the ALJ did inform JCSB that she did not believe that

Individual Education Program meetings held pursuant to IDEA could be

considered private meetings [in which individuals had any reasonable expectation

of privacy which is required for Section 934.02-03, Fla. Stat. to apply].

　　　　But, be that as it may, the statutory 45 day period for filing the final order

has long since expired.   More importantly, there is no statute that gives DOAH

jurisdiction to declare the rights of citizens under the First Amendment, which is

what Plaintiffs are asking this court to do.   The most DOAH could do is find that

JCSB does not have to have any lawfully enacted policy and can deny MOTHER

(and others) recording privileges without having one and without standards, and

that it doesn't violate IDEA by doing so generally.   Therefore, waiting for the

ALJ would be futile, and wholly inadequate to the declaratory action Plaintiffs

have brought here, in any case.


4.　　　The All Writs Act ("AWA"), 28 U.S.C. §1615 was enacted in 1911 and states:

"[t]he Supreme Court and all courts established by act of Congress may issue all

writs necessary or appropriate in aid of their respective jurisdictions and

agreeable to the usages and principles of law."  It does not limit the court's writ

jurisdiction to federal officers.   This court has jurisdiction to require JCSB to perform its statutory duty under 20 U.S.C. 1415 to provide the transcript of due process hearings, including all mandatory discussions with the judge.   "Fed. R. Civ. P. 81(b) largely abolished common law writs of mandamus in federal civil proceedings. However, federal courts may still issue writs of mandamus under the All Writs Act so long as the writ is "'in aid of their respective jurisdictions and agreeable to the usages and principles of law.'" *The Florida Bar Journal*,  June, 2011 Volume 85, No. 6, p.89   Plaintiffs are asking the court to exercise its common law writ jurisdiction in issuing the writ to JCSB.  But if not Plaintiffs seek an order requiring JCSB to provide the transcript required by IDEA.

JCSB's argument that Count VI claim for Writ of Mandamus fails because bringing it in an IDEA hearing at the Florida Division of Administrative Hearings would be futile.   DOAH has no extraordinary writ jurisdiction, and it the ALJ in the underlying case has already refused to order JCSB to provide the electronic transcript which IDEA requires.

JCSB's argument that the claim for Writ of Mandamus fails because its obligation to provide the transcript is not settled, turns on whether the plain language of the statute (and its intent to give parent a full record that can be reviewed by a court) means what it says.   It is standard jurisprudence (the DOAH rule saying that no reporting of preliminary hearings is required) that mandatory hearings in which arguments and critical decisions are made that may not make it into written documents are part of the complete record.   This court is not bound

by the interpretation of federal law that any ALJ has made (though Plaintiffs have

attached two ALJ rulings on this issue in two of the due process cases involving

the same parties, for the court's information).


For all of the above reasons, JCSB's Motion to Dismiss for Failure to State a Claim, or

for failure to exhaust on all counts must be denied.


CERTIFICATE OF SERVICE

I certify that a copy of the foregoing document has been filed electronically and furnished
thereby by Notice of Electronic Filing this 9th day of December  to Bob L. Harris,
Messer, Caparello & Self, PO Box 15579, Tallahassee FL 32317, bharris@lawfla.com.

Respectfully Submitted this 9th day of January 2013.
/s/ Rosemary N. Palmer
Rosemary N. Palmer
FL Bar #70904
5260 Pimlico Drive
Tallahassee FL 32309
(850) 668-9203
ATTORNEY FOR PLAINTIFFS

Enclosures: Amended Complaint in Due Process II (DOAH 12-1273E)
            Final Order in Due Process II (DOAH 12-1273E)
            Order Denying Court Reporting/Transcript (DOAH 10-10485E)
            Order Denying Court Reporting/Transcript (DOAH 12-1273E)
            Order Striking non-IDEA claims (DOAH 10-10485E)

STATE OF FLORIDA
DIVISION OF ADMINISTRATIVE HEARINGS

A.L. by his parent PLB,
PLB individually,
      Petitioner

                                Case No. 12-001273E

V.

School Board of Jackson County, Florida
      Respondent

### AMENDED VERIFIED REQUEST FOR IMPARTIAL DUE PROCESS HEARING

        Comes now, Petitioners A.L, ("STUDENT"), by and through his parent, PLB; and PLB for herself ("MOTHER"); and file this request for due process under the Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C. 1400 et.seq. ("IDEA").

        Because IDEA requires exhaustion "before seeking relief that is also available [under IDEA]" (20 U.S.C. 1415(l))", Petitioner also raised claims under The Rehabilitation Act of 1973, 20 U.S.C. 790 et. seq. ("Section 504"), and the Americans with Disabilities Act, 42 U.S.C. 12101, ("ADA).

        Petitioners explicitly do NOT invoke stay put under IDEA in this case, except as to the accommodations and Assistive Technology that are identified in the June 7, 2010 IEP (which Petitioners do NOT concede SBJC has provided in the past nor since June 7, 2011), and placement of STUDENT in regular education classes, without an aide being assigned to him.

### ISSUES

1.      Whether SBJC violated the IDEA procedurally and/or substantively; and denied STUDENT FAPE by not having a valid and current Individual Education Program ("IEP") from June 6, 2011 to present.

2.      Whether SBJC retaliated against one or more Petitioners for engaging in protected activities by refusing or failing to develop an IEP for student from and after June 6, 2011 to the present.

3.      Whether SBJC discriminated against STUDENT by denying him FAPE under 504 from 6/7/2011 to the present.

4.      Whether SBJC retaliated against one or more Petitioners by refusing to hold an IEP meeting because MOTHER wished to record the meeting.

## PARTIES AND JURISDICTION

5.   A.L (herein "STUDENT") is a sixteen year old tenth grader at Marianna High School who has resided in Jackson County, FL at 4471 Pilcher Rd. Marianna, and attended School Board of Jackson County schools (herein "JCS") at all times relevant in this matter.

6.   SBJC has identified STUDENT as a child with a disability under IDEA in the categories OHI, TBI, Occupational Therapy, Physical Therapy, and Language Impairment, at all times relevant to this complaint.

7.   STUDENT is, and has been at all times relevant to this complaint, an otherwise qualified person with a disability under SECTION 504 and ADA, with substantial impairments in multiple major life activities.

8.   Respondent SBJC is a "local educational agency" ("LEA") under IDEA, and is therefore responsible for providing STUDENT free appropriate public education ("FAPE")

9.   Respondent SBJC is a recipient of federal funds under IDEA and other federal grant programs and is responsible for providing free appropriate public education under SECTION 504.

10.  Respondent SBJC is a covered entity under ADA.

11.  The Division of Administrative Hearings (herein "DOAH") is given jurisdiction under Section 1003.57, Florida Statutes to hear complaints under IDEA.

12.  Without exhaustion of SECTION 504 and ADA claims under IDEA, Petitioner cannot bring such claims in any other forum, pursuant to caselaw in this jurisdiction.

13.  Respondent SBJC must provide impartial hearings under SECTION 504, and may contract with DOAH to do so.

## FACTS

14.  SBJC developed an IEP for STUDENT on or about June 7, 2010, which IEP states that the services duration was through June 2, 2011.

15.  SBJC met to change the annual IEP developed in June 2010 for STUDENT, on November 17, 2010.

16.   STUDENT filed for due process to challenge the changes SBJC put into the November 17, 2010, and to challenge the manner in which it was developed.  That case is the subject of DOAH Case 10-10485E which has been heard, and is pending transcripts and final order.

17.   Petitioner explicitly did not invoke stay put on any issue other than not moving AL to learning strategies class and not assigning him an aide.  The following is STUDENT's original due process request made November 24, 2010:

"We do not agree that the 11-17-2010 IEP provides FAPE for [AL], and we do not want him to be required to take an ESE Learning Strategies Class in place of his regular curriculum, or the result that he not be allowed to have Rec, or have an aide, as as [sic] the school has threatened to do effective 11-29-2010. We are filing not to preserve anything in the latest IEP (which doesn't provide FAPE either) other than his placement in regular classes without an aide, but TO preserve [AL]'s placement in regular classes, without an aide...."

18.   Because MOTHER filed due process request under IDEA, SBJC refused and failed to develop IEP for STUDENT on or after June 6, 2011, continuing to date.

19.   STUDENT has been harmed and denied free appropriate public education under IDEA by SBJC's failure to develop and have in place any IEP since June 7, 2011.

20.   SBJC was aware that MOTHER filed a due process request under IDEA in November 2010.

21.   SBJC retaliated against STUDENT and MOTHER for engaging in protected activities by refusing or failing to develop and have in place a current IEP from and after June 6, 2011 to present, which will continue until it develops an IEP, in violation of IDEA, SECTION 504 and/or ADA.

22.   SBJC staff member Charlene Wiggins emailed MOTHER on March 22, 2011, in response to MOTHER's March 21, 2011 request that STUDENT be given the course schedule he asked for.  Ms. Wiggin's email says, "Thank you for sending this to me. I did get the original from [STUDENT] in class on Monday. As with all ESE students, next year's classes will be discussed at the end of the year IEP meeting, then finalized when we have received FCAT scores. I look forward to seeing you there."

23.   SBJC began the process of setting up the annual IEP meeting in May 2011 but then on May 12, 2011 refused to have the meeting, claiming stay put.

24.   SBJC held a meeting concerning Extended School Year ("ESY") 2011 on June 9, 2011.

Page 3 / 6

25.   SBJC refused to agree to provide STUDENT tutoring services during summer of 2011 that they had provided the previous summer under what they had just claimed (see paragraph 22) was a stay put IEP, including locating the services at Marianna High School.

26.   On June 15, 2011 MOTHER wrote to SBJC staff Shawn Larkin: "Your attorney represented to the ALJ that you were imminently planning IEP meeting for next year, as part of your argument for continuance. We have already pointed out that last year you ran out of time to get things set up. And we intend to do ESY for the entire summer. We do not agree to any delay in holding the IEP for next year. We have suggested dates, and if you are refusing them, then offer your own and as soon as possible. As for present levels of performance, we do have the FCAT data and last year's SAT 10 showing a decline over the years, even though [STUDENT]'s IQ measurement has increased. You can do another SAT 10 --- they are now computerized and cost $15 each (though you do have to arrange for a package of 40 tests, but you surely have that many SWD who need that comprehensive information.) That should be proof enough that what you've been doing hasn't delivered FAPE, and we need to provide the requested tutoring before and after school."

27.   On August 8, 2011, without any consultation as to dates, SBJC sent MOTHER notice of an IEP meeting August 15, 2011.

28.   The meeting was changed to Friday, August 19, 2011 to accommodate MOTHER's previously schedule appointments.

29.   MOTHER wrote to SBJC staff in the August 17, 2011 email: "... I will be recording the IEP meeting. Please ask people to attend who are willing to be recorded. We will waive any of the required people if you cannot find ones in the required categories who are willing to be recorded. When I arrive, I will be recording everyone who is there and will continue until the meeting is over and I have left the school. (In the past I have given in and continued the meeting without recording. You all saw what happened during the meeting that did NOT make it into the meeting notes. It protects us all to have a complete and accurate record of our interaction with each other.[sic]..."

30.   SBJC sent a school resource officer to the front of the Marianna High School office where MOTHER had appeared on August 19, 2011 for the IEP meeting, to tell her she could not go back to the meeting because she was recording it.

31.   On August 22, 2011, MOTHER wrote, "... Ms. Carla Elliott walked up to the front office before the officer and went to the back to tell the officer I was there, when she could have just told me to come with her. I just can't understand why you don't want an accurate record of my child's IEP meeting when we are the only ones with any right to privacy in IEP meetings. I hope you will change your mind so we can hold the IEP meeting for

[STUDENT] or at least agree to waive the IEP meeting to include the things I listed in my previous correspondence. In the meantime, we still are requesting the changes we asked for in my previous correspondence, which I have cut and pasted below. Failure to provide those services and accommodations will deny [STUDENT] FAPE and as we have previously told you we will be sending JCSB the bill for private services. Failure to amend to include the new testing accommodation of doing it in an individual room using a computer will further harm [STUDENT] by meaning he can't use that accommodation for FCAT and the PSAT or PLAN which the district administers, and which it is clear he needs for testing situations. We would like to have a successful year in which [STUDENT] actually learns because he receives the sped, related services and accommodations in the LRE to which he is entitled. Let's get it done by waiving the meeting if you refuse to meet so we can record it..."

32.   On August 22, 2011, SBJC staff Shawn Larkin wrote, "As we've said, we are happy to meet and consider your requests without recording devices."

33.   SBJC has not provided STUDENT regular or special education and related aids and services that (i) are designed to meet individual educational needs of STUDENT as adequately as the needs of nonhandicapped [sic] persons are met and (ii) are based upon adherence to procedures that satisfy the requirements of 34 CFR §§ 104.34, 104.35, and 104.36 from June 7, 2011 to present.


<u>REMEDIES</u>

34.   Petitioner asks the court to grant the following remedies:

   a.   Order SBJC to convene an properly constituted IEP meeting and develop an IEP that provides STUDENT free appropriate public education for summer 2012 and school year 2012-2013.

   b.   Order SBJC to provide STUDENT with 900 hours compensatory education of parents' choice for denial of FAPE school year 2011-2012 including transportation and living expenses if parents choose services that are not local.

   c.   Order SBJC to provide STUDENT with 250 hours compensatory education of parents' choice for denial of FAPE for summer 2011 including transportation and living expenses if parents choose services that are not local.

   d.   Order SBJC to provide STUDENT with compensatory education with 250 of parents choice, including transportation and living expenses if parents choose services that are not local.

   e.   Order SBJC to cease and desist all retaliation.

f.    Order SBJC to pay damages that are determined just.

g.    Order SBJC to pay Petitioner's legal fees and costs in this matter.

h.    Order such other remedies as the court determines just.

The above factual allegations are true and correct to the best of my knowledge and belief.

Executed this 17th day of April 2012.

By MOTHER

### CERTIFICATE OF SERVICE

The original has been filed with Division of Administrative Hearing electronically on April 16, 2012 , copy the same date to Frank E. Bondurant, Bondurant and Fuqua, P.A., 4450 Layfette Street, PO Box 1508, Marianna FL 32447, by email to fbondurant@embarqmail.com.

Rosemary N. Palmer
Attorney for Petitioner s
FBN 070904
5260 Pimlico Drive
Tallahassee FL  32309
floridalawlady@gmail.com
850 668 9203

STATE OF FLORIDA
DIVISION OF ADMINISTRATIVE HEARINGS

```
A. L.,                          )
                                )
      Petitioner,               )
                                )
vs.                             )      Case No. 12-1273E
                                )
JACKSON COUNTY SCHOOL BOARD,    )
                                )
      Respondent.               )
_____)
```

FINAL ORDER OF DISMISSAL

On April 26, 2012, Respondent, Jackson County School Board (JCSB), filed a Motion to Dismiss Amended Verified Request for Impartial Due Process Hearing.  After several extensions, Petitioner, on May 24, 2012, filed a response.  On May 29, 2012, Respondent requested a hearing on its Motion to Dismiss. Thereafter, Petitioner objected to scheduling such a hearing. After review of the pleadings, and record in this matter, Respondent's Motion for Hearing on its Motion to Dismiss was denied since the record on the issue of stay-put is complete and needs no further evidence.

APPEARANCES

For Petitioner:  Rosemary N. Palmer, Esquire
                 5260 Pimlico Drive
                 Tallahassee, Florida  32309

          For Respondent:   Frank Bondurant, Esquire
                            Jackson County School Board
                            4450 Lafayette Street
                            Marianna, Florida  32447

                            Bob Harris, Esquire
                            Messer, Caparello and Self, P.A.
                            2618 Centennial Place
                            Tallahassee, Florida  32308


                    <u>STATEMENT OF THE ISSUE</u>

     The issue in this proceeding is whether the stay-put

provisions of 20 U.S.C. § 1415(j) are in effect regarding

Petitioner's IEP.

                <u>FINDINGS AND CONCLUSIONS OF LAW</u>

     On April 6, 2012, Respondent JCSB received a Verified

Request for Impartial Due Process Hearing from the attorney for

Petitioner.  The request was forwarded to the Division of

Administrative Hearings (DOAH).  Later on April 16, 2012,

Petitioner filed an Amended Verified Request for Impartial Due

Process Hearing.  Petitioner's request for due process is wholly

based on the JCSB's failure to hold an IEP meeting.  After a pre-

hearing conference with all of the parties, a Notice of Hearing,

scheduling the due process hearing for June 18, 2012, in

Marianna, Florida, was entered.

     As indicated, Respondent filed a motion to dismiss

Petitioner's due process hearing request.  The motion was based

on the fact that Petitioner has a pending due process case before

                              2

the Division of Administrative Hearings and that the automatic stay provisions (stay-put) regarding Petitioner's Individualized Education Plan (IEP) provided in 20 U.S.C. section 1415(j) are in effect. Indeed, in this case, there is no dispute that the parties to this action attempted to schedule an IEP meeting and failed, albeit the reason for that failure is in dispute.

However, such reason is immaterial to the issue of stay-put and whether an administrative remedy can be utilized to impose injunctive relief to lift the automatic stay imposed by section 1415(j).

Section 1415(j) provides as follows:

> . . . during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of such child, or, if applying for initial admission to a public school, shall, with the consent of the parents, be placed in the public school program until all such proceedings have been completed.

Under this section, school districts may have the obligation to attempt to review and propose revisions to a child's IEP during the course of litigation.[1/] However, they do not have the authority to make unilateral changes to such placement. See Honig v. Doe, 484 U.S. 305, 323 (1988) and Town of Burlington v. Dept. of Educ. for the Cmmw. of Mass., 736 F.2d 773, 797 (1st Cir. 1984) (Burlington II).

3

Burlington II involved an IEP that was found to not provide
FAPE by a state administrative judge and private school funding
was ordered.  The school district then appealed the decision to
federal district court.  The district court, after an evidentiary
hearing, found the contested IEP provided a free appropriate
education (FAPE) and ordered reimbursement to the district for
the money it had expended for the private school.  Importantly,
for purposes of this case, the district court took additional
evidence regarding the appropriate educational placement of the
subject student for the years which had passed during the
litigation of the case, but for which IEPs had not been prepared
and had not been the subject of review at the state
administrative level.

By the time Burlington II occurred, all of the parties
agreed that the original contested IEP did not provide FAPE, but
disagreed over which school, public or private, could provide
FAPE.  After an in-depth review of the IDEA, the First Circuit
Court of Appeals reversed the decision of the district court and
remanded to the district court for an evidentiary hearing,
including an evidentiary hearing on the issues developed during
the intervening years.  On the issue of placement for years after
the contested IEP for which no IEPs had been completed and no
state administrative review had occurred, the First Circuit,
while noting that the IDEA, in its opinion, did not address the

4

issue of whether IEPs are to be revised during the pendency of federal review and ignoring the practical effects of the mandatory stay-put requirements of the IDEA, developed a judicial rule that IDEA required schools to continue to develop IEPs while litigation was pending, with such IEPs perhaps being reviewed at the state administrative level.  The court felt that such a policy would, among other purposes, assist in promoting settlements.  Id.  The First Circuit viewed the mandatory annual review of the IEP as an ongoing obligation of a school even while litigation is pending.  The Court reiterated this principle when it stated that school districts cannot avoid their IDEA duties by not reviewing a child's IEP during "stay-put," as holding otherwise would reward school districts for "misfeasance or nonfeasance in providing appropriate education services" during a "stay-put" placement.  Indeed, the Burlington II court viewed the mandatory language of subsection 1415(j) more as a guideline when the issue was reimbursement for a unilateral change in placement prior to the end of litigation.  See Maine Sch. Admin. Dist. No. 35 v. Mr. and Mrs. R., 321 F.3d 9, 19 (1st Cir. 2003); MM ex rel. DM v. Sch. Dist. of Greenville County, 303 F.3d 523, 536 (4th Cir. 2002); Amann v. Stow Sch. Sys., 982 F.2d 644, 651 (1st Cir. 1992); Anderson v. Dist. Of Columbia, 877 F.2d 1018, 1023 (D.C. Cir. 1989).  Significantly, however, even without such state administrative review, the First Circuit also recognized and

approved the authority of the district court to hear and take evidence on these later years under its power to grant appropriate relief incident to its determination of the contested IEP for the initial year.  Id. at 396.  Of importance is the fact that the hearing being discussed in Burlington II and Anderson was an evidentiary hearing before a district court with injunctive powers.  Of greater significance is that the Burlington II court did not address whether administrative tribunals have the authority to issue injunctive relief and force the development of an IEP or alter the IEP without IEP team input.

As noted, the language of section 1415(j) is automatic and prevents any change to Petitioner's earlier placement.  In Wagner v. Board of Education of Montgomery County, 335 F.3d 297 (4th Cir. 2003), the Fourth Circuit ruled that the district court erred when it ordered the school board to offer an alternative placement when the stay-put placement became unavailable without utilizing traditional preliminary injunction criteria.

The Fourth Circuit found that section 1415(j) was prohibitive in nature and did not impose any affirmative obligations on the school board to seek an alternative placement. Thus, since the Division does not have injunctive authority, the only remedies for a stay-put IEP, which no longer meets the educational needs of the child, is for the parties to either

agree to a change in placement or for one party to seek a preliminary injunction.  Wagner, supra.

The issue was similarly addressed in Kuszewski v. Chippewa Valley Schools, 131 F. Supp. 2d 926 (E.D. Mich. 2001).  The federal district court held that because of the mandatory stay-put provisions of the IDEA, a school was under no obligation to amend or review an IEP that was the subject of such litigation because when stay-put is in effect, the school district is powerless to alter a child's IEP without the explicit agreement of the parents.  See also C. P. v. Leon Cnty. Sch. Bd. , 483 F.3d 1151, 1155-56 (11th Cir. 2007); Digre v. Roseville Sch. Independent Dist. No. 623, 841 F.2d 245 (8th Cir. 1988); and Johnson v. Special Educ. Hearing Office, 287 F.3d 1176 (9th Cir. 2002); See also M.P. v. Leon Cnty. Sch. Bd., DOAH Case No. 04-0517E (DOAH Mar. 30, 2004) and K.G. v. Santa Rosa Cnty. Sch. Bd., DOAH Case No. 04-1588E (DOAH Aug. 31, 2004).

As stated earlier, the parties' attempts to hold an IEP meeting have failed.  The decision in the earlier case has not yet been rendered and the stay-put provisions of section 1415(j) are in effect.  Additionally, the issues raised in this case are wholly based on the failure of the parties to meet in an IEP meeting and develop a new IEP for A.L.[2/]  However, this administrative tribunal has no authority to dissolve the stay-put injunction and require the development of a new IEP.  Only the

7

civil courts have such power and authority and the parents remedy lies there.  Therefore, because of the automatic stay, this action should be dismissed.

ORDER

Having fully considered the arguments of counsel, it is ORDERED:

That this action is dismissed and the file of the Division of Administrative Hearings is hereby CLOSED.

DONE AND ORDERED this 15th day of June, 2012, in Tallahassee, Leon County, Florida.

DIANE CLEAVINGER
Administrative Law Judge
Division of Administrative Hearings
The DeSoto Building
1230 Apalachee Parkway
Tallahassee, Florida  32399-3060
(850) 488-9675
Fax Filing (850) 921-6847
www.doah.state.fl.us


Filed with the Clerk of the
Division of Administrative Hearings
this 15th day of June, 2012.


ENDNOTES

[1/]  It also should be noted that changes in IEPs that do not involve placement are not subject to the stay-put provisions of IDEA.  However, such nuanced services are not involved here.

2/   The Petitioner did raise an issue of FAPE based on JCSB's refusal to permit the parent to record all meetings with JCSB regarding Petitioner.  The parent has, in part, based continued refusal to participate in an IEP meeting on this inability to record such a meeting due to some of the staff's refusal to grant permission to record them during meetings with the parent. However, the issue of recordation is based on the application of chapter 934, Florida Statutes, and specifically section 934.03 which makes it a crime to intercept certain oral communications without the permission of all the participants to that communication.  Resolution of this issue would involve injunctive relief and can only be addressed by the civil courts.  IDEA simply cannot address issues involving the application of criminal statutes and an individual's right to privacy as determined by the Florida Legislature in the educational arena.

COPIES FURNISHED:

Lindsey Granger, Program Director
Bureau of Exceptional Education
  and Student Services
Department of Education
325 West Gaines Street, Suite 614
Tallahassee, Florida  32399-0400

Rosemary N. Palmer, Esquire
5260 Pimlico Drive
Tallahassee, Florida  32309

Frank Bondurant, Esquire
Jackson County School Board
4450 Lafayette Street
Marianna, Florida  32447

Bob Harris, Esquire
Messer, Caparello and Self, P.A.
2618 Centennial Place
Tallahassee, Florida  32308

Charles M. Deal, General Counsel
Department of Education
Turlington Building, Suite 1244
325 West Gaines Street
Tallahassee, Florida  32399

Lee W. Miller, Superintendent
Jackson County School Board
2903 West Jefferson Street
Marianna, Florida  32446

<u>NOTICE OF RIGHT TO SEEK JUDICIAL RELIEF</u>

This decision is final unless, within 90 days after the date
of this decision, an adversely affected party:

a)  brings a civil action in the appropriate
state circuit court pursuant to Section
1003.57(1)(b), Florida Statutes (2009), and
Florida Administrative Code Rule 6A-
6.03311(9)(w); or

b)  brings a civil action in the appropriate
district court of the United States pursuant
to 20 U.S.C. § 1415(i)(2), and Florida
Administrative Code Rule 6A-6.03311(9)(w).

STATE OF FLORIDA
DIVISION OF ADMINISTRATIVE HEARINGS

```
A. L.,                          )
                                )
      Petitioner,               )
                                )
vs.                             )    Case No. 10-10485E
                                )
JACKSON COUNTY SCHOOL BOARD,     )
                                )
      Respondent.               )
_____ )
```

ORDER DENYING PETITIONER'S MOTION TO COMPEL

On April 18, 2011, Petitioner filed a Motion to Compel that
seeks to require Respondents to provide a court reporter for all
hearings in this matter.  Petitioner's motion is premised upon
20 U.S.C. § 1415(h), which provides, in relevant part:

> (h)  Safeguards.  Any party to a hearing
> conducted pursuant to subsection (f) or (k),
> or an appeal conducted pursuant to
> subsection (g), shall be accorded--
>
> (1)  the right to be accompanied and
> advised by counsel and by individuals with
> special knowledge or training with respect
> to the problems of children with
> disabilities;
>
> (2)  the right to present evidence and
> confront, cross-examine, and compel the
> attendance of witnesses;
>
> (3)  the right to a written, or, at the
> option of the parents, electronic verbatim
> record of such hearing. . . (Emphasis added)

Florida Administrative Code Rule 6A-6.03311(9) provides the corresponding Florida statement of due process hearing rights as follows, in relevant part:

> (v)   An ALJ shall use the provisions of Rules 6A-6.03011 through 6A-6.0361, F.A.C., for conducting due process hearings and shall conduct such hearings in accordance with the Uniform Rules for Administrative Proceedings, Chapter 28-106, F.A.C.  Minimum procedures for due process hearings shall include the following:
>
> 1.   Hearing rights.  Any party to a due process hearing has the right:
>
> a.   To be represented by counsel or to be represented by a qualified representative under the qualifications and standards set forth in Rules 28-106.106 and 28-106.107, F.A.C., or to be accompanied and advised by individuals with special knowledge or training with respect to the problems of students with disabilities, or any combination of the above;
>
> b.   To present evidence, and to confront, cross-examine, and compel the attendance of witnesses;
>
> c.   To prohibit the introduction of any evidence at the hearing that has not been disclosed to that party at least five (5) business days before the hearing;
>
> d.   <u>To obtain written, or, at the option of the parents, electronic verbatim record of the hearing at no cost to the parents</u>; and
>
> e.   To obtain written, or, at the option of the parents, electronic findings of fact and decisions at no cost to the parents....
> (Emphasis added)

2

At the motion hearing held on May 5, 2011, it was apparent that there is no dispute that Respondent Jackson County School Board is responsible for ensuring that a written or electronic verbatim record of the final evidentiary hearing is made available to Petitioner at no cost to Petitioner.  There is also no dispute as to any party's right to bring a court reporter, at its own expense, to preliminary hearings.  The parties disagree, however, as to Petitioner's contention that the Jackson County School Board should be required to pay for a court reporter to attend and transcribe all preliminary hearings.

Petitioner frankly concedes that there is no case law directly on point, but argues that prehearing conferences and motion hearings are essential parts of the due process hearing. The purpose of the "verbatim record" requirement is to ensure that there is a complete record of the proceeding.  Important rulings are made during preliminary hearings, and the absence of a transcript could jeopardize the ability to appeal such rulings.  See Huffman v. Carr, 880 So. 2d 818 (Fla. 1st DCA 2004) ("We must affirm the final judgment in this case, because we have not been supplied with a transcript of the pretrial conference.  In the absence of a record, we have no way of knowing whether Mr. Huffman objected to the lack of proper notice on any issue he did not intend to concede.")

The cases cited by Petitioner establish Petitioner's right to have a court reporter at the preliminary hearings, but not the right to have the Jackson County School Board pay for the court reporter.  The undersigned's independent research found only one case that references the possibility of a parent's right to have a motion hearing recorded at school board expense. In Amann v. Stow School System, 982 F.2d 644, 652-653 (1st Cir. 1992), the court stated the following in its review of a claim under the predecessor to § 1415(h)(3):

> [T]he BSEA [Massachusetts Bureau of Special Education Appeals] committed at worst a harmless error by failing to give the Amanns a transcript of a hearing held on December 7, 1990, at which the BSEA heard the Amanns' request to re-open the proceedings.  The hearing was recorded but the BSEA apparently lost the tape.  The lack of a transcript may have violated the IDEA, see 20 U.S.C. § 1415(d)(3) (party to agency hearing has "right to a written or electronic verbatim record of such

hearing"), but, because the hearing officer
spelled out in writing her reasons for
denying the request to re-open, and because
we have found that she was within her
discretion to make the denial, the BSEA's
procedural negligence caused no substantive
injury.

On one hand, it could be argued that the <u>Annan</u> court
presumed that the parents had the right to have the agency
record their motion hearing, else there would have been no
conclusion that the agency's loss of the tape was "harmless
error" under the circumstances.  (<u>Annan</u> predated the requirement
that the method of creating the verbatim record is at the
parents' option.)  On the other hand, it could be as cogently
argued that the "harmless error" in <u>Annan</u> followed only from the
agency's botching of its <u>voluntary</u> undertaking to record the
motion hearing.

In any event, it is concluded that <u>Annan</u> is insufficient to
justify a broad departure from the common understanding of the
undefined term "due process hearing" as the evidentiary hearing
that forms the basis of the findings of fact in the ALJ's final
order.  The context of 20 U.S.C. § 1415 points to the impartial
due process hearing as a single point in time, with various
events leading up to that point and consequences following from
it.  As to the Florida law aspects of the meaning of "due
process hearing," it should be noted that Florida Administrative
Code Rule 6A-6.03311(9)(v) provides that due process hearings
are to be conducted in accordance with Florida Administrative
Code Chapter 28-106.  Florida Administrative Code Rule 28-
106.214(1) states that the agency is responsible for "preserving
the testimony at final hearings."  This responsibility is
consistent with the language of 20 U.S.C. § 1415(h)(3) and
Florida Administrative Code Rule 6A-6.03311(9)(v)1.d.

Based on the foregoing, it is

ORDERED that Petitioner's Motion to Compel is DENIED.

DONE AND ORDERED this 10th day of May, 2011, in
Tallahassee, Leon County, Florida.

_Lawrence P. Stevenson_

LAWRENCE P. STEVENSON
Administrative Law Judge
Division of Administrative Hearings
The DeSoto Building
1230 Apalachee Parkway
Tallahassee, Florida  32399-3060
(850) 488-9675
Fax Filing (850) 921-6847
www.doah.state.fl.us

Filed with the Clerk of the
Division of Administrative Hearings
this 10th day of May, 2011.

COPIES FURNISHED:

Kim C. Komisar, Section Administrator
Bureau of Exceptional Education
  and Student Services
Department of Education
325 West Gaines Street, Suite 614
Tallahassee, Florida  32399-0400

Frank Bondurant, Esquire
Jackson County School Board
4450 Lafayette Street
Marianna, Florida  32447

P. L.
(Address of record)

Rosemary N. Palmer, Esquire
Rosemary N. Palmer, Attorney at Law
5260 Pimlico Drive
Tallahassee, Florida  32309

E. Gary Early, Esquire
Messer, Caparello & Self, P.A.
2618 Centennial Place
Tallahassee, Florida  32308

5

Bob Harris, Esquire
Messer, Caparello & Self, P.A.
215 South Monroe Street, Suite 701
Tallahassee, Florida  32302

William E. Gandy, Esquire
Office of the Attorney General
The Capitol PL-01
Tallahassee, Florida  32399

STATE OF FLORIDA
DIVISION OF ADMINISTRATIVE HEARINGS


A. L.,                              )
                                   )
        Petitioner,                )
                                   )
vs.                                )    Case No. 12-1273E
                                   )
JACKSON COUNTY SCHOOL BOARD,        )
                                   )
        Respondent.                )
_____)


ORDER DENYING PETITIONER'S MOTION TO REQUIRE RESPONDENT TO
PROVIDE COURT REPORTING AND VERBATIM TRANSCRIPTS
OF TELEPHONE CONFERENCE AND ALL HEARINGS


On May 3, 2012, Petitioner filed a Motion to Require Respondent to Provide Court Reporting and Verbatim Transcripts of Telephone Conference and All Hearings wherein Petitioner seeks to require Respondent to provide a court reporter for all hearings in this matter.  Petitioner's motion is premised upon 20 U.S.C. § 1415(h), which provides, in relevant part:

> (h)  Safeguards.  Any party to a hearing conducted pursuant to subsection (f) or (k), or an appeal conducted pursuant to subsection (g), shall be accorded --
>
> (1)  the right to be accompanied and advised by counsel and by individuals with special knowledge or training with respect to the problems of children with disabilities;
>
> (2)  the right to present evidence and confront, cross-examine, and compel the attendance of witnesses;
>
> (3)  the right to a written, or, at the option of the parents, electronic verbatim record of such hearing . . . .  (Emphasis added).

Florida Administrative Code Rule 6A-6.03311(9) provides that the corresponding Florida statement of due process hearing rights as follows, in pertinent part:

> (v)  An ALJ shall use the provisions of Rules 6A-6.03011 through 6A-6.0361, F.A.C., for conducting due process hearings and shall conduct such hearings in accordance with the Uniform Rules for Administrative Proceedings, Chapter 28-106, F.A.C.  Minimum procedures for due process shall include the following:
>
> 1.  Hearing rights.  Any party to a due process hearing has the right:
>
> a.  To be represented by counsel or to be represented by a qualified representative under the qualifications and standards set forth in Rules 28-106.106 and 28-106.107, F.A.C., or to be accompanied and advised by individuals with special knowledge or training with respect to the problems of students with disabilities, or any combination of the above;
>
> b.  To present evidence, and to confront, cross-examine, and compel the attendance of witnesses;
>
> c.  To prohibit the introduction of any evidence at the hearing that has not been disclosed to that party at least five (5) business days before the hearing;
>
> d.  <u>To obtain written, or, at the option of the parents, electronic verbatim record of the hearing at no cost to the parents</u>; and
>
> e.  To obtain written, or, at the option of the parents, electronic findings of fact and decisions at no cost to the parents . . . . (Emphasis added).

Under IDEA, it is clear that Respondent Jackson County School Board is responsible for ensuring that a written or

electronic verbatim record of the final evidentiary hearing is made available to Petitioner at no cost to Petitioner.  However, the issue here is whether the Jackson County School Board should be <u>required</u> to pay for a court reporter to attend and transcribe all preliminary or motion hearings.

Petitioner argues that prehearing conferences and motion hearings are essential parts of the due process hearing. Further, she argues that the purpose of the "verbatim record" requirement is to ensure that there is a complete record of the proceeding.  Important rulings are made during preliminary hearings, and the absence of a transcript could jeopardize the ability to appeal such rulings.  <u>See</u> <u>Huffman v. Carr</u>, 880 So. 2d 818 (Fla. 1st DCA 2004) ("We must affirm the final judgment in this case, because we have not been supplied with a transcript of the pretrial conference.  In the absence of a record, we have no way of knowing whether Mr. Huffman objected to the lack of proper notice on any issue he did not intend to concede.").

However, the cases cited by the Petitioner in the motion only establish Petitioner's right to have a court reporter at preliminary hearings.  The cases do not establish the right to have Jackson County School Board pay for the court reporter. There is only one judicial case which references the possibility of a parent's right to have a motion hearing recorded at school board expense.  In <u>Amann v. Stow School System</u>, 982 F.2d 644, 652-653 (1st Cir. 1992), the court stated the following in its review of a claim under the predecessor to § 1415(h)(3):

> [T]he BSEA [Massachusetts Bureau of Special Education Appeals] committed at worst a harmless error by failing to give the Amanns a transcript of a hearing held on December 7, 1990, at which the BSEA heard the Amanns' request to re-open the proceedings.  The hearing was recorded but the BSEA apparently lost the tape.  The lack of a transcript may have violated the IDEA, <u>see</u> 20 U.S.C. § 1415(d)(3) (party to agency hearing has "right to a written or electronic verbatim record of such hearing"), but, because the hearing officer spelled out in her writing her reasons for denying the request to re-open, and because we have found that she was within her discretion to make the denial, the BSEA's

3

procedural negligence caused no substantive injury.

Importantly, Amann predated the requirement that the method of creating the verbatim record is at the parents' option. Given that, the Amann court presumed that the parents had the right to have the agency tape record their motion hearing, else there would have been no conclusion that the agency's loss of the tape was "harmless error" under the circumstances. However, it is unclear that the "harmless error" in Amann resulted from the agency's botching of its voluntary undertaking to record the motion hearing or the parents' right to such a recording. The case did not address the issue of whether a court reporter was required to preserve the record of a motion hearing or who should pay for a court reporter.

However, the language of 20 U.S.C. § 1415 points to the impartial due process hearing as a single point in time, with various events leading up to that point and consequences following from it. Given that language, Amann is insufficient to justify a broad departure from the common understanding of the undefined term "due process hearing" as the evidentiary hearing that forms the basis of the findings of fact in the ALJ's final order.

As to the Florida law aspects of the meaning of "due process hearing," it should be noted that Florida Administrative Code Rule 6A-6.03311(9)(v) provides that due process hearings are to be conducted in accordance with Florida Administrative Code Rule 28-106.214(1) states that the agency is responsible for "preserving the testimony at final hearings." This responsibility is consistent with the language of 20 U.S.C. § 1415(h)(3) and Florida Administrative Code Rule 6A-6.03311(9)(v)1.d.

Based on the foregoing, it is

ORDERED that Petitioner's Motion to Require Respondent to Provide Court Reporting and Verbatim Transcripts of telephone Conference and All Hearings is DENIED.

DONE AND ORDERED this 7th day of May, 2012, in Tallahassee, Leon County, Florida.

DIANE CLEAVINGER
Administrative Law Judge
Division of Administrative Hearings
The DeSoto Building
1230 Apalachee Parkway
Tallahassee, Florida  32399-3060
(850) 488-9675
Fax Filing (850) 921-6847
www.doah.state.fl.us

Filed with the Clerk of the
Division of Administrative Hearings
this 7th day of May, 2012.


COPIES FURNISHED:

Lindsey Granger, Program Director
Bureau of Exceptional Education
  and Student Services
Department of Education
325 West Gaines Street, Suite 614
Tallahassee, Florida  32399-0400

Frank E. Bondurant, Esquire
Jackson County School Board
4450 Lafayette Street
Marianna, Florida  32447
fbondurant@embarqmail.com

Rosemary N. Palmer, Esquire
Rosemary N. Palmer, Attorney at Law
5260 Pimlico Drive
Tallahassee, Florida  32309
floridalawlady@gmail.com

Bob L. Harris, Esquire
Messer, Caparello and Self, P.A.
2618 Centennial Place
Tallahassee, Florida  32308
bharris@lawfla.com

STATE OF FLORIDA
DIVISION OF ADMINISTRATIVE HEARINGS

A. L.,                              )
                                    )
        Petitioner,                 )
                                    )
vs.                                 )    Case No. 10-10485E
                                    )
JACKSON COUNTY SCHOOL BOARD,        )
                                    )
        Respondent.                 )
_____)

ORDER

On April 7, 2011, Respondent Jackson County School Board ("School Board") filed a Motion to Strike suggesting that certain allegations in the Verified Amended Request for Impartial Due Process Hearing ("Petition") were either inappropriate in the IDEA context or were time barred.  At the May 5, 2011, motion hearing, the School Board agreed to submit an amended motion that more specifically delineated the items in the Petition to which the School Board objected as well as the reasons for the objections.  On May 13, 2011, the School Board filed an Amended Motion to Strike that set forth the School Board's specific objections.

This order partially grants the School Board's Amended Motion to Strike.  The specific items stricken from the Petition are set forth below.  The parties should note that the items stricken are those that the undersigned considered to be unarguably beyond the scope of this hearing.  Other items were not stricken because the undersigned determined that Petitioner should be given the opportunity to prove the factual allegations made and tie them to the IDEA.

The page and paragraph references are to the Petition.  As to the Petition generally, it should be understood that the Order Dismissing Individual Respondents issued on May 6, 2011, disposed of all the allegations lodged against individual Respondents by the Petition.  As to the specific remedies requested on pages 31 through 37, it should be understood that the only remedies available in this proceeding are those provided by the IDEA.

Page 2:  The School Board's motion to strike the third through tenth paragraphs of the Preliminary Statement is GRANTED to the extent that Petitioner requests immediate equitable relief beyond the powers of the this tribunal under the IDEA. It is noted that it is the relief request that is stricken, not the underlying factual allegations contained in these paragraphs.

Page 3:  The School Board's motion to strike the "from 2007" language in paragraph H is GRANTED.  This should be understood to apply to each instance in which the Petition makes allegations regarding events more than two years before the filing of the underline original Petition on November 24, 2010. Petitioner's evidentiary presentation at the hearing may include the period preceding two years before November 24, 2010, but the relief sought is limited to that two year period.

Page 5:  The School Board's motion to strike paragraphs DD and EE is GRANTED insofar as they specifically seek relief under statutes other than the IDEA.  Petitioner will not be barred from attempting to make a claim under the IDEA based on the facts alleged in these paragraphs.

Page 8:  The School Board's motion to strike paragraph AAA is GRANTED because discrimination against the child's mother is not an IDEA issue.  The School Board's motion to strike paragraphs BBB, CCC, DDD, and FFF is GRANTED because this is not a rule challenge proceeding.  Petitioner will not be barred from attempting to make a claim under the IDEA based on the facts alleged in these three paragraphs.

Page 28:  The School Board's motion to strike paragraph 51 is GRANTED.  The School Board's provision of records to the child's mother is not an issue under the IDEA.  The School Board's motion to strike paragraph 60 is GRANTED insofar as it is framed as a discrimination claim rather than an IDEA claim. Petitioner will not be barred from attempting to make a claim under the IDEA based on the facts alleged in paragraph 60.

Page 29:  The School Board's motion to strike paragraph 62 is GRANTED insofar as it is framed as a discrimination claim rather than an IDEA claim.  Petitioner will not be barred from attempting to make a claim under the IDEA based on the facts alleged in paragraph 62.

Page 30:  The School Board's motion to strike paragraph 63 is GRANTED insofar as it is framed as a retaliation claim rather than an IDEA claim.  Petitioner will not be barred from attempting to make a claim under the IDEA based on the facts alleged in paragraph 63.  The School Board's motion to strike paragraph 64 is GRANTED.  Discrimination against the child's mother is not an issue in this IDEA proceeding.  The School Board's motion to strike paragraph 65 is GRANTED insofar as it is framed as a retaliation claim rather than an IDEA claim. Petitioner will not be barred from attempting to make a claim under the IDEA based on the facts alleged in paragraph 65.  The School Board's motion to strike paragraph 66 is GRANTED. Retaliation against the child's mother is not an issue in this IDEA proceeding, though the facts alleged may constitute an IDEA claim as to the child.

Page 31:  As to paragraphs 67, 68, and 69, the School Board's motion to strike is DENIED without prejudice.  On their face, Petitioner's claims regarding basketball do not appear to implicate FAPE, but Petitioner will be given an opportunity to demonstrate that participation in basketball is necessary for FAPE.

DONE AND ORDERED this 26th day of May, 2011, in Tallahassee, Leon County, Florida.

_Lawrence P. Stevenson_
_____
LAWRENCE P. STEVENSON
Administrative Law Judge
Division of Administrative Hearings
The DeSoto Building
1230 Apalachee Parkway
Tallahassee, Florida  32399-3060
(850) 488-9675
Fax Filing (850) 921-6847
www.doah.state.fl.us

Filed with the Clerk of the
Division of Administrative Hearings
this 26th day of May, 2011.

3

COPIES FURNISHED:

Kim C. Komisar, Section Administrator
Bureau of Exceptional Education
  and Student Services
Department of Education
325 West Gaines Street, Suite 614
Tallahassee, Florida  32399-0400

Frank Bondurant, Esquire
Jackson County School Board
4450 Lafayette Street
Marianna, Florida  32447

P. L.
(Address of record)

Rosemary N. Palmer, Esquire
Rosemary N. Palmer, Attorney at Law
5260 Pimlico Drive
Tallahassee, Florida  32309

E. Gary Early, Esquire
Messer, Caparello & Self, P.A.
2618 Centennial Place
Tallahassee, Florida  32308

William E. Gandy, Esquire
Office of the Attorney General
The Capitol PL-01
Tallahassee, Florida  32399