IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF FLORIDA

PANAMA CITY DIVISION

| | | |
|---|---|---|
| A.L., by P.L.B., and | ) | |
| P.L.B. for herself | ) | |
|     Plaintiffs | ) | Case No. 5:12-cv-299 RS-EMT |
| **vs.** | ) | |
| | ) | |
| Jackson County School Board, | ) | |
|     Defendant | | |

PLAINTIFF'S RESPONSE TO
DEFENDANT JACKSON COUNTY SCHOOL BOARD'S REPLY TO
PLAINTIFFS' RESPONSE TO
DEFENDANT'S MOTION FOR SANCTIONS PURSUANT TO FEDERAL RULE 11

COMES NOW, Plaintiffs, by and through counsel, and responses to JCSB's reply to their response to JCSB's Motion for Rule 11 Sanctions as follows:

1.  JCSB acknowledges in Paragraphs 6 and 8 that Plaintiffs did raise the claims in the Amended Complaint in this case in IDEA due process, and such claims were dismissed.

2.  JCSB is misrepresents the facts in its Paragraph 6, 8(a). Plaintiffs filed in this court the same claims which the administrative law judge had dismissed for lack of jurisdiction (because Division of Administrative hearings does not recognize jurisdiction for Section 504 or ADA claims; and because it does not have equity jurisdiction, the ALJ

determined only a court had to address the automatic stay put issue by providing injunctive relief) when Plaintiffs tried to exhaust them at IDEA due process II.[1]

None of the four claims were the subject of claims that were included in the first due process case, which included only the claims raised on or before the November 2010 initial filing, even the claims that were raised in the Amended Due Process Request filed March 15, 2011.

Under IDEA, administrative due process claims are supposed to be tried to completion in a maximum of 75 days after filing.  34 C.F.R. 300.515(a).  Nothing in IDEA anticipates an administrative due process order arriving more than 21 months later, when the parent only consented to continuances of one week, and three days.

And both the ALJ and JCSB misunderstands/misrepresents the claims as being related solely and governed absolutely by the IDEA stay put provision as interpreted by the Eleventh Circuit.  1)  There are two claims under Section 504: Count V for retaliation; and Count IV for second for denial of free appropriate public education on and after one June 6, 2011 under that separate and distinct anti-discrimination statute, which defines

---

[1]Plaintiffs recognize that this court has now dismissed the amended complaint for failure to exhaust.  But as the Final Order on Fees in DOAH 12-2386F that the school district attached to its Reply identifies the exact language that is in that amended complaint as the claims that were raised in Due Process II, Plaintiffs hope this court will reconsider that dismissal, and so moves.   IDEA due process requests are only required to contain a certain limited amount of information: neither notice pleading nor the federal court *Twombley* pleading standards apply.

free appropriate public education differently and more explicitly than does IDEA[2]. .

Congress explicitly recognized separate rights under Section 504 in IDEA, 20 U.S.C.

1415(l).

Count II is a claim for declaratory relief under the First Amendment that has no relationship to any interpretation of stay put under IDEA.

Count I is a claim for injunctive relief under IDEA. The United States Supreme Court interpreted the IDEA stay put provision to allow injunctive relief in *Honig v. Doe*, 484 U.S. 305, 306, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988) when agreement between the parents and schools wasn't possible:

> The "stay-put" provision prohibits state or local school authorities from
> unilaterally excluding disabled children from the classroom for dangerous
> or disruptive conduct growing out of their disabilities during the pendency
> of review proceedings. Section 1415(e)(3) is unequivocal in its mandate
> that "the child shall remain in the then current educational placement"
> (emphasis added), and demonstrates a congressional intent to strip schools
> of the unilateral authority they had traditionally employed to exclude
> disabled students, particularly emotionally disturbed students, from school.
> This Court will not rewrite the statute to infer a "dangerousness" exception
> on the basis of obviousness or congressional inadvertence, since, in
> drafting the statute, Congress devoted close attention to Mills v. Board of
> Education of District of Columbia, 348 F.Supp. 866, and Pennsylvania
> Assn. for Retarded Children v. Pennsylvania, 334 F.Supp. 1257, and 343
> F.Supp. 279, thereby establishing that the omission of an emergency
> exception for dangerous students was intentional. However, Congress did
> not leave school administrators powerless to deal with such students, since
> implementing regulations allow the use of normal, nonplacement-changing
> procedures, including temporary suspensions for up to 10 schooldays for

---

Under Section 504, FAPE consists of "the provision of regular or special education and related aids and services designed to meet the student's individual educational needs as adequately as the needs of nondisabled students are met". 34 C.F. R. 104.33

students posing an immediate threat to others' safety, **while the Act allows for interim placements where parents and school officials are able to agree, and authorizes officials to file a § 1415(e)(2)[3] suit for "appropriate" injunctive relief where such an agreement cannot be reached.** [Emphasis added]

In Paragraph 8(d) of its Reply, JCSB misstates Honig v. Doe, by failing to acknowledge either the above language OR the It is unthinkable that injunctive relief wouldn't be equally available to parents when the harms they see for their student are as great as the harm being done to the student in this case who is not receiving any of the specialized instructions and few of the accommodations that experts have opined that he needs to learn the material he needs to learn to pass the exit tests for high school and successfully transition to college, and that had continued long past the 75 day window in which the first due process should have been completed.   The *CP v. Leon County* case does preclude injunctive relief because it wasn't about injunctive relief.

The Administrative Law Judge in the second DOAH case in which Plaintiffs brought the claims in this one, wrote in her final order, "Of importance is the fact that the hearing being discussed in <u>Burlington II</u> and *Anderson* [referring to cases in the First and D.C. Circuits] was an evidentiary hearing before a district court with injunctive powers." [Final Order DOAH 12-1273E, p. 6] See also *Wagner v. Board of Education of Montgomery County*, 335 F.3d 297 (4th Cir. 2003) in which the court overturned a District Court order changing an IEP when that court had NOT done the analysis for injunctions.

---

[3]In the current version of IDEA the section number is 20 U.S.C. 1415(i)(2).

If the Eleventh Circuit hasn't spoken on the issue of changing IEPs by injunction, and three federal circuits, as well as the Supreme Court have recognized the use of injunctive powers to change stay put, then it cannot be frivolous to exhaust such claims at due process as Plaintiffs did in DOAH II or bring such claims in Plaintiffs Amended Complaint to which JCSB objects.

While JCSB likely intends to argue an affirmative defense of IDEA stay put provision for the claim of retaliation under IDEA (COUNT V), Plaintiffs intend to show that the reason that JCSB refused to agree to update STUDENTS IEP, or hold the August IEP meeting had nothing whatever to do with any stay put provision, but simply because JCSB wanted to discourage Plaintiffs from engaging in activities protected by IDEA and Section 504, and punish them for doing so.  JCSB's right to bring a defense, doesn't mean that the claim is frivolous.

There is only a single IDEA claim that has any relevance to the stay put clause of the IDEA as interpreted by the Eleventh Circuit.   It is COUNT III for denial of FAPE under  IDEA.  IDEA's stay put clause, 20 U.S.C. 1415(j) is intended to prevent the school district from unilaterally changing the accommodations and services in a students IEP, not as an excuse not to provide the student free appropriate public education.  As Plaintiffs have pointed out before, in DOAH I , Plaintiffs specifically did not claim stay put because they have never agreed that JCSB's IEPs provide STUDENT with the opportunity to master the general curriculum.  See  20 U.S.C. 1401 (9), (29), (34);  and 34 C.F.R. 300.39(b)(3).

The stay put provision does not prevent JCSB from agreeing to changes the parents seek. If JCSB is required under standard administrative law as a government entity to avoid being arbitrary and capricious in its decisions, then its decision to refuse to update an IEP with new information provided by experts after evaluation is highly likely to be found invalid by that standard alone. Preventing parents from raising claims that have to be exhausted at the administrative level and are the IDEA claims over which DOAH does claim jurisdiction, would prevent them from raising their claims for relief of discrimination and injunctive and declaratory relief in this court. So raising such a claim either at the due process level or in this court cannot be frivolous if doing so is required for exhaustion.

3. As noted in Plaintiffs' Response, the commentary to Rule 11 says that one fact that may refute a finding of frivolity is whether the attorney did due dilegence. Seeking counsel from peers and others who practice does show that Plaintiffs' counsel did due dilegence in her decision to bring the claims. Comments to Rule 11 says:

> The rule is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories. The court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted. Thus, what constitutes a reasonable inquiry may depend on such factors as how much time for investigation was available to the signer; whether he had to rely on a client for information as to the facts underlying the pleading, motion, or other paper; whether the pleading, motion, or other paper was based on a plausible view of the law; or whether he depended on forwarding counsel or another member of the bar.

That is the reason for Plaintiffs' counsel's affidavit.  The statements in it are not hearsay as they are not intended to prove the truth of the statements, but just what counsel did in preparation for bringing the claims.

4.     Plaintiffs do not dispute that the word "automatic" is used.   But the purpose of the statutory language is to prevent schools from making unilateral decisions when parents object.  That is inconsistent with forcing a student to remain in an inappropriate placement that parents have challenged, if parents agree to the change.

5.     The ALJ's final order in the Section 57.105 case is irrelevant to whether Rule 11 sanctions should be ordered as Defendants request.  The order came down after Plaintiffs filed its response.  Florida Statute limits its applicability to Chapter 120 claims, and the underlying claims were brought under Fla. Stat 1003.57.   Further IDEA has a detailed and carefully considered attorney provision that pre-empts state law, even if this one applies.  And Plaintiffs will appeal it.  (Section 57.105 caselaw requires, Plaintiffs requested, and the ALJ agreed at tthe September 5, 2012 hearing that she would hold a hearing on the amount of the attorney fees if she determined to award them, which Plaintiffs have not yet been given.  Plaintiffs will appeal the reward.)   And the ALJ's order makes the same mistake about the specific claims, only one of which is there even an argument that the claims should not have been brought because of CP.

6.     There is nothing egregious about seeking to stop the longstanding discrimination and retaliation that JCSB has conducted against Plaintiffs and their counsel.   That is

precisely why the educational civil rights statutes of IDEA and Section 504, and the First Amendment exist.

Therefore, Plaintiffs respectfully request that the court deny JCSB's motion for sanctions.

CERTIFICATE OF SERVICE

I certify that a copy of the foregoing document has been filed by email to the court and to the clerk, and a copy by electronic mail to this 12th day of February, 2013 to Matthew Fuqua, Bondurant and Fuqua, 4450 Lafayette Street, Marianna, FL, mfuqua@embarqmail.com., and Bob L.Harris, Messer, Caparello & Self, PO Box 15579, Tallahassee FL 32317, bharris@lawfla.com.

Respectfully Submitted this 12th day of February 2013.

/s/ Rosemary N. Palmer
Rosemary N. Palmer
FL Bar #70904
5260 Pimlico Drive
Tallahassee FL 32309
(850) 668-9203
ATTORNEY FOR PLAINTIFFS