IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

A.L., by P.L.B., and P.L.B. for herself,
    Plaintiffs,

v.                                      Case No.: 5:12cv299/RS/EMT

JACKSON COUNTY SCHOOL BOARD,
    Defendant.
_____/

**<u>REPORT AND RECOMMENDATION</u>**

I.    BACKGROUND

    This cause is before the court upon referral by the district court (doc. 67). In brief, the events that led to this referral are as follows. Plaintiffs initiated this action by filing a complaint in September 2012 (*see* doc. 1). They later filed an amended, six-count complaint (doc. 13). Defendant moved to dismiss the amended complaint, and its motion was granted on January 30, 2013 (docs. 24, 35). Additionally, in an order issued February 15, 2013, the district court granted Defendant's motion for Rule 11 sanctions and awarded attorneys' fees and costs to Defendant (docs. 27, 41). In awarding sanctions, the district court noted in pertinent part that Plaintiffs' attorney "was well aware of the current law on the issue and knew or should have known that the claims in the amended complaint of this case were in violation of Fed. R. Civ. P. 11(b)" (doc. 41 at 3–4).[1] The court also directed the parties to "confer and attempt to reach an agreement on the issue of reasonable attorneys' fees and costs," and that if they were unable to do so the issue would be referred to a special master (*id.* at 4). The undersigned was then appointed as the special master, and the matter of fees and costs was referred to her (*see* doc. 67).

---

[1] The page numbers used in this Report refer to the page numbers assigned by the court's electronic docketing system, rather than those the parties have assigned or any other page numbers that appear.

After the referral and a review of the docket, the undersigned issued an order that generally required the parties to comply with the directives of N.D. Fla. Loc. R. 54.1(E),[2] as it was not evident that the parties had done so (doc. 68). Consistent with the undersigned's directives, Defendant then filed affidavits setting out the requested amount of costs and fees and indicating the requested rate of compensation and number of hours spent in the defense of the case (doc. 75, affidavit of defense counsel H. Matthew Fuqua (hereafter "Fuqua"); doc. 77, affidavit of defense counsel Bob L. Harris (hereafter "Harris"), which affidavit reflects work performed by Harris and four other attorneys in his law firm). Defendant also filed supporting affidavits from two attorneys, both of whom indicate that the requested rates for hourly compensation are in line with the prevailing market rate for the work performed and that the time expended defending this case was reasonable and necessary (doc. 76, affidavit of J. David House (hereafter "House"), as to the request for fees by Fuqua; doc. 78, affidavit of Michael P. Donaldson (hereafter "Donaldson"), as to request for fees by Harris and the four other attorneys in his firm). Together, Defendant's affidavits reflect that Defendant seeks a total of $13,970.25 in attorneys' fees, based upon a claim by Fuqua for fees in the amount of $1,250.25 (for 10.3 hours of work at an hourly rate of $125)[3] and a claim by Harris for fees in the amount of $12,720 (for approximately 85 hours of work by Harris and the other attorneys in his firm at hourly rates of either $125 or $150) (*see* doc. 75 (Fuqua); docs. 77, 77-1 (Harris, et al.); *see also* doc. 71 (summary of attorneys' time records filed by Harris, indicating that 84.8 hours were expended by the attorneys in his firm defending this case)). Fuqua claims no costs; Harris seeks costs in the total amount of $73.75 (*id.*).

---

[2] This local rule address motions for attorneys' fees and sets forth, among other matters, the timing requirements for filing such motions; the requirements relating to maintaining and filing fees records; the requirement that parties make good faith efforts to settle both liability for, and amount of, attorneys' fees and expenses; and the bifurcated procedure for determining liability for, and amount of, attorneys' fees and expenses when settlement efforts have failed in this regard. *See* N.D. Fla. Loc. R. 54.1. As noted *supra*, in the instant case the district court has already determined the matter of liability, and the undersigned has been tasked only with recommending the amount of attorneys' fees to award.

[3] The undersigned notes that 10.3 (hours) times $125 (hourly rate) equals $1,287.50, or $37.25 more than the amount of Fuqua's request. The undersigned cannot determine the basis for this discrepancy and thus will consider Fuqua's request as one for fees in the amount of $1,250.25, the amount he has specifically asked for, even though the amount determined by multiplying his hourly rate by the number of hours he expended is slightly higher.

Case No.: 5:12cv299/RS/EMT

Plaintiffs object to the amount of the attorneys' fees Defendant seeks. In pertinent part Plaintiffs claim that Defendant's counsel have claimed excessive hours; claimed a total amount of fees that is nearly double an amount they previously offered to settle the amount of Rule 11 sanctions; claimed amounts for work, the description of which has been redacted on counsels' time entries, such that Plaintiffs cannot determine the propriety of the corresponding claims for compensation; claimed compensation for work performed by multiple attorneys; and claimed compensation for work that is insufficiently or inaccurately documented (*see generally* doc. 83). Plaintiffs additionally argue that Harris and his colleagues should not be compensated for work performed prior December 20, 2012, the date Harris filed a notice of appearance in this case (*id.* at 3; *see also* doc. 23).

Plaintiffs also contend, essentially, that the undersigned should assign no weight to the opinions of House and Donaldson—to the extent they opine that the time expended by Defendant's counsel was reasonable and necessary—because they "acknowledge [no] experience litigating civil rights or special education cases" (*see* doc. 83 at 6). Instead, Plaintiffs urge, the court should consider the affidavit they have supplied, which is that of Plaintiffs' attorney (Rosemary N. Palmer (hereafter "Palmer")) (doc. 83 at 6, 10–11). In this affidavit Palmer outlines her experience handling cases similar to the one at bar; states she is "familiar with attorneys['] fees and costs which would be fair and reasonable" in cases such as the instant case; indicates she has reviewed the affidavits submitted by Defendant (i.e., docs. 75–78) and opines that the hours claimed by Defendant's counsel are "unreasonable and unnecessary for the proper presentation of the case, given the circumstances under which the services were rendered"; claims that the "services of eight different attorneys against a sole practitioner with limited resources is overreaching and thwarts the purpose of the laws involved in this case, not to mention creates extra work unnecessarily"[4]; opines that it "is unreasonable for

---

[4] Although Plaintiffs contend that "eight different attorneys" defended this case, the materials submitted by Defendant reflect that five attorneys with Harris' firm (Messer Caparello, P.A.) claim fees under Rule 11 (Bob Harris, Denay Brown, Melanie Leitman, James Dean, and Rob Telfer) (*see* doc. 77-1), three of whom have appeared in this action (Bob Harris, Denay Brown, and James Dean). Although the materials submitted by Fuqua, of the law firm of Bondurant & Fuqua, P.A., suggest that more than one attorney in the firm worked on this case, only Fuqua's name is mentioned as having worked on the case, and he is the only counsel from his firm to have appeared in this action (*see* docs. 75, 76). However, it is evident from the materials submitted by Harris that Attorney Frank Bondurant (hereafter "Bondurant") worked with Fuqua in the defense of this case (*see, e.g.*, doc. 77-1 at 2, 3, 4, 5). It thus appears that seven attorneys worked on the defense of the case, two from Fuqua's firm and five from Harris' firm. In any event, the undersigned construes Plaintiffs' objection to "multiple attorneys" defending this case as an objection to duplicative billing (i.e., billing by multiple attorneys for work that was performed by only one attorney, or billing by multiple

attorneys to claim fees for which the time entry explanation has been redacted"; and concludes by offering to agree to an award that she believes to be reasonable, namely, "the sum of $6,902.50 [the figure Defendant's counsel previously offered to settle the amount of Rule 11 sanctions] minus $3885 for the unnecessary work of the many attorneys" who worked on this case for Defendant, which results in a fee award in the total amount of $3,017.50 (doc. 83 at 10–11; *see also id.* at 9, letter from Harris dated March 1, 2013, indicating that together Defendant's counsel "are looking for $6,902.50," which is the "total [] for the fees expended specifically for the Rule 11 sanctions that were sought by [Defendant] and approved by Judge Smoak").[5]  Plaintiffs do not contest, or even address, the costs sought by Harris; nor do Plaintiffs contest the hourly rates sought by any of Defendant's counsel.

## II. CONTROLLING AUTHORITIES

### A. Rule 11

Rule 11 of the Federal Rules of Civil Procedure provides that "[b]y presenting to the court a pleading, written motion, or other paper[,] . . . an attorney . . . certifies" that to the best of his or her knowledge:  (1) the pleading is not being presented for an improper purpose; (2) the "claims . . . and other legal contentions are warranted by existing law or by a nonfrivolous argument" to change existing law; and (3) "the factual contentions have evidentiary support or . . . will likely have evidentiary support after . . . discovery." Fed. R. Civ. P. 11(b).  Once the court determines that Rule 11(b) has been violated, as the district court did here, the court "may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c).  Various types of sanctions are available under Rule 11, including the one imposed here, namely, "reasonable attorney's fees and other expenses directly resulting from the violation." Fed.

---

attorneys for work that multiple attorneys actually performed though the work could have and should have been performed by only one attorney), to the extent any such duplicative billing exists.

[5] Plaintiffs also object to Rule 11 sanctions in general and argue, in part, that the district court's decision to award Rule 11 sanctions was premature and unfairly penalizes Plaintiffs, "a minor and [the minor's] indigent parent," and Palmer, who represents Plaintiffs on a contingency basis and thus will "be paid only if and when [Plaintiffs] prevail" (*see* doc. 83 at 1–2).  As previously noted (*see* footnote 2, *supra*), the district court has already determined the propriety of Rule 11 sanctions, including by awarding them in the first instance and, more recently, by denying Plaintiffs' motion for reconsideration of the order awarding sanctions (*see* docs. 27, 41, 86, 88).  Moreover, the district court referred this matter to the undersigned to recommend an amount of attorneys' fees to be awarded to Defendant, not to revisit the issue of Plaintiffs' liability for sanctions.  Thus, the undersigned need not—and will not—further consider Plaintiffs' arguments regarding the propriety of sanctions.

Case No.: 5:12cv299/RS/EMT

R. Civ. P. 11(c)(4). *See also* Williams v. Carney, 266 F. App'x 897, 900 (11th Cir. 2008) (unpublished) ("The sanctions that a district court chooses to impose can include 'part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.'") (quoting Fed. R. Civ. P. 11(c)).[6]

B.   Determining the Amount of the Attorneys' Fee Award

"[T]he starting point in any determination for an objective estimate of the value of a lawyer's services is to multiply hours reasonably expended by a reasonable hourly rate," which results in what is known as the "lodestar" or the "lodestar fee." Norman v. Housing Auth. of Montgomery, 836 F.2d 1292, 1299 (11th Cir. 1988) (citation omitted). A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation. Blum v. Stenson, 465 U.S. 886, 895–96 n.11 (1984); *see also* Gaines v. Dougherty County Board of Education, 775 F.2d 1565, 1571 (11th Cir. 1985) (same). The fee applicant bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates. NAACP v. City of Evergreen, 812 F.2d 1332, 1338 (11th Cir. 1987). Satisfactory evidence at a minimum is more than the affidavit of the attorney performing the work. Blum, 465 U.S. at 896 n.11.

With regard to ascertaining the number of "hours reasonably expended," the Supreme Court has stated that "excessive, redundant or otherwise unnecessary" hours should be excluded from the amount claimed. Hensley v. Eckerhart, 461 U.S. 424, 434 (1983). Stated another way, fee applicants must exercise "billing judgment." *Id.* at 437. Thus, "the hours excluded are those that would be unreasonable to bill to a client and therefore to one's adversary *irrespective of the skill, reputation or experience of counsel*." Norman, 836 F.2d at 1301 (citing Hensley, 461 U.S. at 434). Although "evidence of prevailing views among practitioners in the area" is clearly beneficial, "[g]eneralized statements that the time spent was reasonable or unreasonable of course are not particularly helpful and not entitled to much weight." *Id.* (citing Hensley, 461 U.S. at 439 n.15). Although redundant hours, which "generally occur where more than one attorney represents a client," may be deducted,

---

[6] The undersigned cites Williams (and other unpublished cases herein) only as persuasive authority and recognizes that unpublished opinions are not considered binding precedent. *See* U.S. Ct. of App. 11th Cir. Rule 36-2, 28 U.S.C.A.

"[t]here is nothing inherently unreasonable about a client having multiple attorneys, and they may all be compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer." Norman, 836 F.2d at 1301–02 (citations omitted).

After the lodestar fee is determined, the court should then consider whether an adjustment is necessary. This is so because a sanction under Rule 11, including one that involves an award of attorneys' fees to the prevailing party, "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4); *see also* Baker v. Alderman, 158 F.3d 516, 528 (11th Cir. 1998) ("[D]eterrence remains the touchstone of the Rule 11 inquiry.") (footnote omitted). Additionally, it is clear that "[t]he conduct and resources of the party to be sanctioned are relevant to the determination of the amount of sanctions to be imposed." *Id.*; *see also* Bullard v. Downs, 161 F. App'x 886, 887 (11th Cir. 2006) (unpublished) ("In determining the amount of attorney's fees to award to the opposing party as part of Rule 11 sanctions, the district court must consider the ability to pay of the party subject to sanctions.") (citing Byrne v. Nezhat, 261 F.3d 1075, 1099 n.53 (11th Cir. 2001) (citing Baker, 158 F.3d at 528)). "The district court should also inquire as to the extent to which the nonviolating party's expenses could have been avoided, or mitigated, and reduce or increase the award accordingly." Baker, 158 F.3d at 528 (footnotes omitted). More recently the Eleventh Circuit has stated, albeit in an unpublished opinion, that a court "should consider the following factors in determining an appropriate [Rule 11] sanction": (1) whether the improper conduct was willful, or negligent; (2) whether the conduct was part of a pattern of activity, or an isolated event; (3) whether the conduct infected the entire pleading, or only one particular count or defense; (4) whether the person being sanctioned engaged in similar conduct in other litigation; (5) whether the conduct was intended to injure; (6) what effect the conduct had on the litigation process in time or expense; (7) whether the responsible person is trained in the law; (8) what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; and (9) what amount is needed to deter similar activity by other litigants. Thomas v. Early County, Ga., 518 F. App'x 645, 646 (11th Cir. 2013) (unpublished) (citing Fed. R. Civ. P. 11, advisory committee notes (1993 Amendments)). Finally, the court enjoys wide discretion in determining reasonable attorneys' fees. Norman, 836 F.2d at 1304.

III. DISCUSSION

A.  Attorneys' Fees

<u>Hourly Rates</u>

Although Plaintiffs object to the number of hours expended by Defendant's counsel in defending this case, they do not object to the hourly rates claimed by counsel (i.e., $125 (Fuqua and some of the attorneys in Harris' firm) and $150.00 (Harris and some of the attorneys in his firm)), and the undersigned easily concludes that the hourly rates are reasonable.[7] Thus, with regard to work performed by Fuqua, the court will apply an hourly rate of $125, which is the rate he claims (*see* doc. 75). With regard to the work performed by Harris and the four other attorneys in his firm, the undersigned finds that an hourly rate of $137.50, the average of the two hourly rates claimed, is an appropriate rate to apply, as multiple attorneys have claimed hourly rates of either $125 or $150 (*see* doc. 77-1)—two attorneys (Brown and Leitman) have even claimed $125 for some work and $150 for other work (*see id.* at 4, 6, 8, 11, 13, 16)—and it would be unnecessarily tedious and difficult to apply different rates to multiple instances of work performed by five different attorneys. Moreover, although an hourly rate of $137.50 is not precisely the rate claimed by Harris and his colleagues, it is close to the rates they actually charged for defending this case and is largely consistent with the opinions of House and Donaldson.[8] In short, the undersigned finds that the average hourly rate of

---

[7] As the district court is well aware, the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412 (eff. Mar. 29, 1996), authorizes attorney's fees based on an hourly rate of $125. And the Eleventh Circuit has found proper an EAJA award based upon an hourly rate of $147 for work done in 2005 and 2006. <u>Brungardt v. Comm'r of Soc. Sec.</u>, 234 F. App'x 889, 891 (11th Cir. 2007) (unpublished) (also noting "that 'a court is itself an expert on the question [of a reasonable hourly rate] and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value.'") (quoting <u>Norman</u>, 836 F.2d at 1303). Although the instant case is not subject to the provisions of the EAJA, the hourly rate of $125 set forth in the EAJA—in 1996—and the Eleventh Circuit's approving higher rates since then based on changes in the cost of living, are noted merely to illustrate that the rates claimed by Defendant's counsel here, for work performed in 2012 and 2013, are reasonable. *See* <u>Brungardt</u>, 234 F. App'x at 891 (approving district court's determination that the "market [hourly] rate" was between $125 and $150 per hour and, as previously noted, its decision to award fees under the EAJA based on an hourly rate of $147).

[8] Although Plaintiffs argue that this court should "assign no weight" to the affidavits and opinions of House and Donaldson, that argument relates to their opinions that the hours expended by defense counsel were reasonable and necessary (not their opinions regarding the hourly rates claimed by defense counsel). The undersigned finds persuasive the opinions of House and Donaldson regarding prevailing hourly rates but finds that their "[g]eneralized statements that the time spent [by defense counsel] was reasonable" to be of little help and thus will not rely on the latter opinions in determining, *infra*, the reasonableness of the hours expended by defense counsel. *See* <u>Norman</u>, 836 F.2d at 1301. Likewise, the undersigned finds Palmer's self-serving affidavit to be of little help and thus will not rely on the opinions expressed therein in determining the reasonableness of the hours expended by defense counsel. *See,*

$137.50 is a reasonable rate to apply under the circumstances here and thus will do so with respect to the work performed by all of the attorneys with Harris' firm.

<u>Number of Hours Expended (Fuqua)</u>

With regard to the hours claimed by Fuqua (a total of 10.3), the undersigned first notes that Plaintiffs' overall objections to the number of hours expended by defense counsel appear largely directed to the hours claimed by Harris, et al., not Fuqua. For example, although Plaintiffs complain of redacted time entries and billing for work performed by multiple attorneys, none of Fuqua's entries are redacted, and he is the only attorney from his firm that seeks fees (*see* doc. 75). Regardless, the undersigned has conducted an independent review of Fuqua's records and notes that his time entries are well documented. Additionally, it appears that the time expended by Fuqua was necessary and not clearly duplicative of the time expended by the attorneys in Harris' firm. Although both firms claim time for legal research related to Fed. R. Civ. P. 4—which research was evidently related to the issue of whether Defendant was properly served or whether Defendant could be required to pay the costs of service (*see* doc. 75 at 1, doc. 77-1 at 4) (*see also* docs. 18, 19 (Plaintiffs' motion to require Defendant to pay the costs of service and Defendant's response thereto, respectively))—the time entries submitted by both firms suggest that the firms worked together and shared or discussed the results of their research concerning Rule 4. The firms' time entries further reflect that, ultimately, Fuqua drafted and filed the response (doc. 19) to Plaintiffs' motion (doc. 18) and that only Fuqua has claimed time (two hours) for doing so (*see* doc. 75 at 1). That more than one firm or attorney researched issues relating to the propriety of Defendant's summons or the manner in which Defendant was served is not a reason to deny compensation for the research, especially considering: (1) that the total hours claimed are relatively minimal (i.e., 1 hour of research by Fuqua and no more than 1.1 hours of research by the attorneys in Harris' firm); and (2) that only Fuqua has claimed compensation for time expended in drafting Defendant's response to Plaintiffs' motion (which motion, incidentally, was denied, after the district court concluded that Plaintiffs failed to comply with Rule 4 (*see* doc. 20)) (*see* docs. 75 at 1; doc. 77-1 at 4).

---

*e.g.*, <u>Blum</u>, 465 U.S. at 896 n.11 ("[s]atisfactory evidence at a minimum is more than the affidavit of the attorney performing the work"); *see also* N.D. Fla. Loc. R. 54.1(E)(3) (noting that a supporting affidavit should be "from an attorney, familiar with the area of law involved," not from the party's own attorney).

Case No.: 5:12cv299/RS/EMT

Continuing, the undersigned notes that the firms' billing records also overlap with respect to research and/or other matters relating to the filing of Defendant's motion to dismiss (doc. 24), Defendant's motion for sanctions (doc. 27), and Defendant's motion for leave to file a reply to Plaintiffs' response in opposition to the motion for sanctions (doc. 33) (*see* doc. 75 at 2, doc. 77-1 at 5–8). Again, however, the undersigned finds that Fuqua should not be denied compensation merely because more than one attorney worked on a particular motion or conducted research related to issues involved in the motion. *See* Norman, 836 F.2d at 1301–02 ("[t]here is nothing inherently unreasonable about a client having multiple attorneys, and they may all be compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer."). Further, it should be noted that Fuqua declined to seek compensation for a large number of activities for which the attorneys in Harris' firm seek compensation (*compare, e.g.*, doc. 77-1 at 2, 3, 4, 5, 6, 7, 8, 9, 10, 12, 13, 14, 15 (Harris, et al.'s, time entries reflecting communications between attorneys in Harris' firm with Fuqua or Bondurant on October 9, 18, and 19, 2012; November 26, 2012; December 7, 13, 20, and 26, 2012; January 1, 2, 3, 4, 9, 28, and 30, 2013; February 5, 11, and 25, 2013; March 7, 18, 27, and 28, 2013; and April 12, 19, 26, and 30, 2013) *with* doc. 75 at 1–2 (Fuqua's time entries/activities for which he claims compensation, <u>only three of which relate to communications with attorneys in Harris' firm</u>)). It thus appears that the total time claimed by Fuqua is a most conservative estimate, given that the attorneys in Harris' firm seek compensation for approximately twenty-six communications with Fuqua or Bondurant related to this case, but Fuqua seeks compensation for no more than three such communications. Hensley, 461 U.S. at 437; *see also* Oxford Asset Mgmt., Ltd. v. Jaharis, 297 F.3d 1182, 1197 (11th Cir. 2002) (noting that courts may consider the use of billing judgment, or lack thereof, in determining reasonableness of hours claimed). Moreover, a summary of Fuqua's time expenditures, as reflected on a notice he filed on May 14, 2013, reflects that he expended a total of 12.05 hours defending this case (*see* doc. 69), yet he seeks compensation for only 10.3 hours—a fact that bolsters the undersigned's conclusion that Fuqua used wise billing judgment and proceeded cautiously and conservatively in requesting fees under Rule 11. In sum, after a meaningful and careful review of Fuqua's time entries, the undersigned concludes that his request for compensation based on 10.3 hours of work is reasonable, especially in view of his obvious use of wise billing judgment. Thus, if no adjustments are made to the lodestar fee as to Fuqua,

his fee award should be $1,250.25 (which is the specific amount he requests and an amount that is primarily based on 10.3 hours of work at an hourly rate of $125 (*see* footnote 3, *supra*)).

### Number of Hours Expended (Harris, et al.)

With regard to the time expenditures claimed by Harris and his colleagues, the undersigned first notes that they seek compensation for numerous activities they engaged in that relate to an appeal in this case, which appeal was initiated by Plaintiffs on February 27, 2013 (*see* doc. 44, Notice of Appeal ("NOA")).  The district court, however, entered its order awarding Rule 11 sanctions to Defendant on February 15, 2013, nearly two weeks prior to Plaintiffs' filing the NOA, and the district court's decision to award sanctions was clearly based on Plaintiffs' pursuit of this action in the district court (*see* doc. 41).  To be sure, the district court's decision does not address Plaintiffs' pursuit of an appeal (and could not, given that Plaintiffs did not file their NOA until after the sanctions order issued), and it does not authorize an award of fees incurred by Defendant's counsel in connection with Plaintiffs' appeal.  Thus, the undersigned concludes that an award of attorneys' fees to Defendant's counsel, for time expended in relation to Plaintiffs' appeal (*see* doc. 77-1 at 12–15, reflecting the expenditure of approximately 19.6 hours with respect to the appeal), is beyond the scope of the district court's order, unauthorized by the terms of that order, and will not be recommended herein.[9]

The undersigned thus addresses the remaining time entries—i.e., those that do not relate to activities undertaken in connection with Plaintiffs' appeal—submitted by Harris and his colleagues. Initially, the undersigned rejects Plaintiffs' argument that fees should not be awarded for activities occurring before Harris entered a notice of appearance in this action.  First, Plaintiffs have cited no authority for their broad proposition that such fees are inappropriate, and the undersigned is aware of no such authority that applies here.  Second, it is obvious from the time entries that pre-date Harris' appearance that the time was expended defending this action.  Not only do the entries begin on October 2, 2012 (*see* doc. 77-1 at 2)—which is nearly three weeks after Plaintiffs initiated this action on September 13, 2012 (*see* doc. 1, complaint)—but also the entries themselves make it clear that

---

[9] The undersigned takes no position on whether Defendant is entitled to fees incurred by its counsel in connection with Plaintiffs' ultimately-unsuccessful appeal; the undersigned merely declines to recommended an award of such fees herein based on the limited nature of the district court's Rule 11 findings and related referral (*see* docs. 41, 67).

activities for which compensation is sought relate to the defense of this case (*see, e.g.*, doc. 77-1 at 2–4 (time entries dated in October and November 2012, referencing "service" issues, the "summons," and a "message from Rosemary Palmer re: Amended Complaint")). Third, and most important, the docket reflects that on April 22, 2013, Defendant filed a motion seeking "leave to file attorney fees late" (doc. 60). Harris, the author of the motion, specifically noted therein that he and the other defense attorneys wished to submit fee records for the period from October 2012 through April 2013 (*see id.* at 1). On May 8, 2013, the district court granted Defendant's motion and permitted the defense attorneys—including Harris, who did not enter an appearance in this case until December 20, 2012—to file untimely fee records for the time frame of October 2012 through April 2013 (doc. 65). Thus, by implication, the district court has already determined that Harris, et al., are entitled to fees for activities that pre-date Harris' appearance. This is not to say, however, that Harris and his colleagues are entitled to compensation for all of the remaining time entries, as explained next.

Initially, some of the remaining time entries are redacted to such an extent that the nature of the work for which Harris and his colleagues seek compensation is unclear (*see, e.g.*, doc. 77-1 at 9 (time entry dated February 4, 2013, stating "Legal research and analysis regarding effect [redacted] . . . 1.90 [hours]")). Others reflect more than one activity in the same entry and are partially redacted, but the corresponding "total hours expended" are not broken down or otherwise reduced to account for the redacted activities (*see, e.g., id.* at 9, 12 (entries dated February 5, 2013, and March 1 and 19, 2013)). Thus, the undersigned cannot determine the amount of time actually expended on the non-redacted activities, which are the only activities for which compensation can be considered (the court cannot determine the propriety of awarding fees for the redacted activities because the nature of those activities is unknown). Additionally, many of the time entries lack sufficient detail and thus preclude a determination as to whether Harris and his colleagues were "unreasonably doing the same work" or whether each made "distinct contribution[s]." Norman, 836 F.2d at 1301–02.[10] Moreover, as previously noted, Harris, et al., seek fees for approximately twenty-three communications with

---

[10] As previously noted, Plaintiffs object to an award of fees for work performed by multiple attorneys, but awarding such fees is not inherently improper. It is only improper to award such fees if the attorneys were unreasonably performing the same work. To be clear, the undersigned is not finding in this instance that Harris and his colleagues unreasonably performed the same work; the undersigned is merely concluding that the description of the work provided lacks sufficient detail to determine whether the attorneys did so.

Fuqua's firm for which Fuqua did not claim fees.[11]  In light of the foregoing, the undersigned recommends that the total hours for which compensation is sought be reduced by fifteen.

Thus, as Harris, et al., seek compensation for a total of approximately eighty-five hours of work, the undersigned finds that (for lodestar purposes) they should be compensated for only fifty hours (i.e., 85 hours less 20 hours (for time spent in connection with Plaintiffs' appeal[12]), less an additional 15 hours (for the remaining time entries' deficiencies, noted *supra*, and the less-than-certain or obvious use of wise billing judgment)).  Therefore, if no adjustments are made to the lodestar fee as to Harris and his colleagues, the fee award to them should be in the total amount of $6,875 (50 x $137.50).  This amount, incidentally, is largely consistent with the amount Harris indicated he would accept to settle the matter of Rule 11 sanctions (*see* doc. 83 at 9, letter authored by Harris and dated March 1, 2013, advising Palmer that his firm (and Fuqua's firm) would settle that matter by accepting fees totaling $6,902.50).[13]

---

[11] Similarly, Harris, et al., appear to seek fees for every hour they expended in the defense of this case, while Fuqua omitted some hours (*compare* docs. 71, 77, 77-1 (Harris' time entries and summary of total hours expended (both totaling 84.5 hours), *with* docs. 69, 75 (Fuqua's time entries and summary of total hours expended (reflecting 12.05 and 10.3 hours, respectively)).  However, many of the time entries and corresponding time expenditures from Harris, et al., are redacted, and they do not seek fees for those redacted entries (*see* doc. 77-1).  Thus, as with Fuqua, Harris and his colleagues might be seeking fees for less time than they actually expended.  Nevertheless, given their claim for multiple communications with Fuqua that Fuqua did not claim, and their attempt to claim fees for work performed in connection with Plaintiffs' appeal, the undersigned finds that they did not—at least arguably—exercise wise billing judgment or discretion in seeking fees here or, similarly, did not do so to the same extent as Fuqua.

[12] As previously noted, the time entries from Harris' firm appear to reflect that the attorneys expended 19.6 hours on matters related to Plaintiffs' appeal.  For the sake of simplicity, the undersigned has rounded this (approximate) number of hours up to twenty (as the undersigned did with regard to the total number of hours claimed by Harris, et al. (i.e., 84.8 hours expended has been rounded up to 85)).

[13] The undersigned recognizes that the lodestar fee recommended here ($6,875), when added together with the recommended lodestar fee for Fuqua ($1,250.25), is higher than the amount Harris previously agreed to accept on behalf of both his firm and Fuqua's firm, but that does not change the undersigned's conclusions.  When parties offer to settle, they often—in fact, usually—agree to settle for less than they may actually be entitled to receive.  In rejecting Defendant's offer, Palmer knowingly accepted the risk that an amount determined by the court at a later date would be higher.  What is more, Harris and the other defense attorneys expended additional hours related to the matter of Rule 11 sanctions after Palmer rejected the offer to settle (*see, e.g.*, doc. 77-1 at 12, 15), and thus defense counsels' fees necessarily increased thereafter, a fact of which Palmer knew or should have known at the time she rejected the offer.

Accordingly, if no adjustments are made to the lodestar, Defendant's attorneys would together be entitled to a fee award totaling $8,125.25 ($1,250.25 (to Fuqua) + $6,875 (to Harris, et al.)). However, if any adjustments are made, the undersigned concludes that the <u>minimum</u> amount of attorneys' fees that should be awarded is $3,017.50 (the amount Palmer has offered to pay (*see* doc. 83)), and the maximum amount is the total lodestar fee.[14] While determining an appropriate amount of fees is far from an exact science, the undersigned finds that the use of the scale in this instance is appropriate. First, the scale is based on a careful analysis of the parties' submissions. Second, even if the parties' submissions had not been carefully analyzed, the undersigned would find—using her own independent judgment, and based on her own knowledge and experience concerning reasonable and proper fees—that an award within the scale's range is appropriate.

<u>Appropriate Amount of Fees</u>

Prior to analyzing the factors set forth in <u>Thomas</u>, 518 F. App'x at 646, which the undersigned will do in determining whether the award to Defendant should be at the high, middle, or low point of the scale, the undersigned will provide additional details regarding the underlying order of the district court imposing Rule 11 sanctions, because those details are relevant to an analysis of the factors.

As noted *supra*, in awarding sanctions the district court found in relevant part that Palmer "was well aware of the current law on the issue" and thus knew or should have known that the claims set forth in Plaintiffs' complaint—all of which were dismissed—were brought in violation of Rule 11 (doc. 41 at 3). More specifically, the district court found that Palmer was well aware of the law because she represented a plaintiff in a prior, similar case (<u>CP v. Leon County School Board, et al.</u>, which Palmer initiated in this court on February 26, 2003 (*see* Case No. 4:03cv65/RH/WCS (N.D. Fla.))). The district court ruled against CP on the merits of his claim under the Individuals with Disabilities Education Act ("IDEA") and subsequently granted summary judgment on all of his remaining claims (doc. 93),[15] save one claim that CP abandoned (*see id*. doc. 106 & n.2).[16] Palmer,

---

[14] Hereafter, the undersigned will refer to the range of fees (i.e., from $3,017.50 to $8,125.25) as "the scale."

[15] The district court addressed the IDEA claim first (in part because the full administrative record as to that claim was already before the court and the plaintiff had filed a motion for judgment on the pleadings). *See* Case No. 4:03cv65/RH/WCS, docs. 64, 93, 106 at 3–4. In rejecting the IDEA claim on its merits, the district court upheld the

on behalf of CP, appealed, and in relevant part challenged the district court's final judgment in favor of the Leon County School Board, denying CP's claims under the IDEA. *See* CP v. Leon Cnty. Sch. Bd. Florida, 483 F.3d 1151, 1152 (11th Cir. 2007). On April 10, 2007, the Eleventh Circuit affirmed the decision of the district court and found in relevant part that the school board properly complied with the IDEA's "stay-put" provision by maintaining CP's then-current placement through the school year, without updating CP's individualized education program ("IEP"), because CP's claims were on appeal through the school year and the parties could not reach agreement on an alternative placement; thus, the stay-put provision remained in effect, and the school board could not unilaterally alter the IEP. *Id.* (citing Honig v. Doe, 484 U.S. 305, 323 (1988)). CP appealed to the United States Supreme Court, and on or about October 11, 2007, the Court denied certiorari. Palmer initiated the instant action nearly five years later.

In the order awarding Rule 11 sanctions in the instant case, the district court noted that the Supreme Court has stated that the relevant section of the IDEA is "'unequivocal'" and "'plainly'" states "that a school board *shall not* change the current education placement of a child without the consent of the parent or until the issue is resolved through the administrative hearing process" (doc. 41 at 3) (quoting 20 U.S.C. § 1415(j) (the "stay-put" provision of the IDEA); Honig, 484 U.S. at 323). The district court next noted that in an "almost identical case," CP v. Leon County School Board, "Defendant and Plaintiff could not agree to changes in the child's IEP" and thus "the stay-put provision of the IDEA prevented [the school board] from updating the IEP" (doc. 41 at 4). The district court then concluded:

> The attorney in this case is the same attorney in the *CP* case. She was well aware of the current law on the issue and knew or should have known that the claims in the amended complaint of this case were in violation of Fed. R. Civ. P. 11(b). Therefore,

---

rulings of the state administrative law judges, concluded that the defendants had not violated the IDEA, and found that CP had received the free and appropriate education to which he was entitled. *Id.*

[16] The claims dismissed on summary judgment were claims alleged under § 504 of the Rehabilitation Act; under the Americans with Disabilities Act ("ADA"); under 42 U.S.C. §1983 (for violation of the plaintiff's substantive due process rights); under the Florida Educational Equity Act (the state counterpart to the IDEA); and for common law negligence (educational malpractice and failure to provide adequate accommodations for CP's disability). *See* Case No. 4:03cv65/RH/WCS, doc. 106 at 1–2.

Defendant's Motion For Sanctions Pursuant to Federal Rule 11 (Doc. 27) is **GRANTED**. Defendant is awarded attorneys' fees and costs against Plaintiffs. (doc. 41 at 5).

In light of the foregoing factual backdrop and other relevant considerations, the undersigned now addresses the factors set forth in Thomas, 518 F. App'x at 646.

1. Whether the improper conduct was willful, or negligent.

It appears that Palmer's conduct was, at a minimum, knowing, and at a maximum, willful, but in any event not merely negligent (a conclusion that is bolstered by the tone of the district court's findings (*see* doc. 41)). Therefore, this factor weighs in favor of an award at or near the high end of the scale.

2. Whether the improper conduct was part of a pattern of activity, or an isolated event.

In CP, the Eleventh Circuit pointed out in a footnote that Palmer cited "a number of cases" in the appellate brief but failed to "clearly articulate" how those cases support the arguments she made. CP, 483 F.3d at 1157 n.7. In the same footnote, the court noted that one case cited by Palmer, on which she "relie[d] heavily," Burlington v. Dep't of Educ., 471 U.S. 359 (1985), was inapposite. CP, 483 F.3d at 1157 n.7. Thus the footnote—which essentially criticizes Palmer's brief-writing skills—evidences a "pattern" to the extent it demonstrates that Palmer has previously made unsupported arguments in her filings or cited a case for a proposition it does not support. It appears, therefore, that this factor should weigh in favor of an award toward the high end of the scale, to the extent that the two misdeeds noted in the CP case, followed by the misconduct in the instant case, establish a "pattern" of activity. Given that there is some evidence of a pattern of misconduct, as opposed to no such evidence, but considering that the pattern appears to be somewhat limited, the undersigned will give Palmer the benefit of the doubt and find that factor is essentially "neutral" and thus weighs in favor of an award near the middle point of the scale.

3. Whether the improper conduct infected the entire pleading, or only one particular count or defense.

The district court dismissed Plaintiffs' amended complaint in its entirety. Thus, the improper conduct evidently infected the entire pleading and, correspondingly, this factor weighs in favor of an award toward the high end of the scale.

4.     Whether the person has engaged in similar conduct in other litigation.

Although there is nothing in the record suggesting that Palmer previously initiated an action without a good faith basis for doing so, there is evidence demonstrating that Palmer has previously been criticized by a court for pursuing arguments that are unsupported by the authorities she has cited (as explained with regard to factor two, *supra*). Thus, as with factor two (and for the reasons stated with regard to factor two), this factor weighs in favor of an award near the middle point of the scale.

5.     Whether the improper conduct was intended to injure.

The record does not support a finding that Palmer's conduct was intended to injure. Thus, this factor weighs in favor of an award near the low end of the scale.

6.     What effect the improper conduct had on the litigation process in time or expense.

As previously noted, Palmer initiated this action on September 13, 2012, the case was dismissed on Defendant's motion on January 30, 2013, and the order imposing sanctions was entered on February 15, 2013. Thus, when compared with the average federal case, this case was short lived and disposed of quickly. Nevertheless, the district court found that no good-faith basis existed to initiate the case in the first place; thus, the improper conduct affected the entire litigation. This factor therefore supports an award at the high end of the scale.

7.     Whether the responsible person is trained in the law.

Palmer and Palmer alone (not her clients) is responsible for the conduct at issue, and she indisputably is trained in the law. This factor clearly supports an award at the high end of the scale.

8.     What amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case.

Unfortunately, Palmer has not indicated the nature or extent of her financial resources. She states only that she is "sole practitioner with limited resources" (doc. 83 at 11). Her generalized statement is woefully inadequate to determine the true extent of her financial resources. *Cf.* Bullard, 161 F. App'x at 888 ("The district court considered Mr. Bullard's [financial] affidavit, which described his assets, including several bank accounts and two houses, and the court reasonably found that the Bullards had the ability to pay $4000 [in attorney fees as a Rule 11 sanction]."). However, given the offer Palmer previously made to settle the matter of Rule 11 sanctions, it is clear that she is able to afford an award of at least $3,017.50. Additionally, although the undersigned is aware that

sole practitioners often do not have the same resources as larger law firms, Palmer failed to provide information relevant to this factor or any information whatsoever regarding her personal or professional finances. Her failure to do so arguably waives any argument that she cannot afford to pay the fees sought by Defendant and, correspondingly, warrants a finding that this factor supports an award at the high end of the scale. Additionally, as this factor addresses "repetition in the same case," the undersigned notes that Palmer pursued an appeal in the instant case after the district court imposed sanctions, and that the appeal—as with the appeal of CP v. Leon County School Board (for which Palmer attempted to pursue even to the United States Supreme Court)—resulted in a finding that the district court did not err in dismissing this action (*see* doc. 89). Thus, the mere imposition of sanctions did not deter Palmer from pursuing an appeal that the Eleventh Circuit later determined to be without merit (*id.*). It therefore appears that an award at the high end of the scale is necessary to achieve the deterrent effect—the "touchstone" of the Rule 11 inquiry—of the sanctions. Baker, 158 F.3d at 528. Together, then, these circumstances likely support an award at the high end of the scale. Nevertheless, the undersigned will again give Palmer the benefit of the doubt and find that this factor supports an award at or near the middle point of the scale.

        9.      <u>What amount is needed to deter similar activity by other litigants.</u>

In the undersigned's view, any award should deter similar activity by other litigants, and it is difficult to ascertain a precise amount that will deter such similar activity. The undersigned notes, though, that a large award would likely have a greater impact on a sole practitioner than it would on a large law firm. Thus, the award ought to be designed to deter activity by similar (i.e., sole) practitioners, and to this extent the factor weighs in favor of an award at the low end of the scale. Additionally, it is clear that Palmer, who is solely responsible for the sanctioned conduct, will also be solely responsible for paying the entire amount of the sanctions awarded, another circumstance that weighs in favor of an award at the scale's low end. For these reasons, an amount at or near the low end of the scale appears sufficient to deter like activity by similarly-situated practitioners.

In summary, four factors support an award at the high end of the scale, three factors support an award at the middle point of the scale, and two factors support an award at the low end of the scale. Thus, on average, the undersigned finds that an award slightly above the middle point of the scale is

Case No.: 5:12cv299/RS/EMT

appropriate. The exact mid-point is $5,571.38,[17] and the undersigned therefore recommends an award of fees in the total amount of $6,000.00. Given that the undersigned has previously found that Fuqua should be compensated for approximately ten hours, and Harris, et al., should be compensated for approximately fifty hours, the undersigned further recommends an award to **Fuqua** in the amount of **$1,020** (which is 17% (or approximately 10/60th) of $6000), and to **Harris, et al.**, in the amount of **$4,980** (which is 83% (or approximately 50/60th) of $6000).

  B.  Costs

Fuqua seeks no costs, and thus none should be awarded to him. Harris seeks costs in the total amount of $73.75, for copying expenses ($11.75), telephone expenses ($40), and conference call expenses ($22) (*see* doc. 77 at 2; doc. 77-1 at 8, 11, 13, 16). Plaintiffs do not object to any of the costs sought by Harris, and the undersigned finds that the minimal costs for which he seeks reimbursement are reasonable. Thus, costs in the amount of $73.75 should be awarded to Harris.

Accordingly, it is respectfully **RECOMMENDED** that:

1.  Attorneys' fees be awarded to the law firm of Bondurant & Fuqua, P.A, in care of Attorney H. Matthew Fuqua, in the total amount of **$1,020**.

2.  Attorneys' fees be awarded to the law firm of Messer Caparello, P.A., in care of Attorney Bob Lynn Harris, in the total amount of **$4,980**.

3.  Costs be awarded to the law firm of Messer Caparello, P.A., in care of Attorney Bob Lynn Harris, in the amount of **$73.75**.

At Pensacola, Florida, this 15th day of April 2014.

               /s/ *Elizabeth M. Timothy*
               **ELIZABETH M. TIMOTHY**
               **UNITED STATES MAGISTRATE JUDGE**

---

[17] The low end of the scale ($3,017.50) plus the high end of the scale ($8,125.25) equals $11,142.75. Thus, the average or middle point of the scale is $5,571.38 ($11,142.75/2 = $5,571.375).

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only</u>. A copy of objections shall be served upon the magistrate judge and all other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).