IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF FLORIDA

PANAMA CITY DIVISION

| | | |
|---|---|---|
| A.L., by P.L.B., and | ) | |
| P.L.B. for herself | ) | |
|     Plaintiffs | ) | Case No. 5:12-cv-299 RS-EMT |
| **vs.** | ) | |
| | ) | |
| Jackson County School Board, | ) | |
|     Defendant | | |

PLAINTIFFS' OBJECTIONS TO MAGISTRATE'S REPORT AND
RECOMMENDATIONS ORDER [DKT 91][1] CORRECTED

COMES NOW, Plaintiffs, by and through counsel, and objects to the

Magistrate's Report and Recommendations as described below[2].

1.     The court's order of May 13, 2013 Dkt.68 ordered defendants to submit fees and

    plaintiffs to challenge or accept the amounts.   Plaintiffs did not have sufficient

    notice to know that they were required to do more that challenge defendant's fee

    proposal.   The order does not disclose that the court would make findings on

    considerations other than the amount of the fees.  The order doesn't identify that

---

[1] Plaintiffs' have refined some objections and argument in this filed version of their objections.

[2] Given how shocking the Rule 11 sanction order was, and the contents of the Report that so deeply challenge Plaintiffs' counsel's work and intentions, it was tough to write these objections.   Plaintiffs' counsel wonders if it is possible to object without making the court think she refuses to accept accountability and therefore deserves more.   She wishes there were a way to challenge without coming across as unwilling to accept correction: the latter is not true.  This court's depiction of her work is unrecognizable to her.  Plaintiffs' only intent was to do what they could to avoid wasting years of AL's educational opportunity, which can never be recovered.

it will consider what sanctions to apply. And the court did not hold any hearing on the extensive fact finding it made in its report. That deprives Plaintiffs of due process.

2. The court made findings of fact about Plaintiffs intentions and actions that are not based on any evidence and which Plaintiffs have not had any opportunity to rebut, without any notice of intent to do that. (See attached affidavits from PLB and Plaintiffs' counsel.)

3. The court's award exceeds the standard in Rule 11( c) (4) that attorney fees only be awarded if "warranted for effective deterrence".

4. The court awarded Rule 11 sanctions against plaintiffs. [Dkt.41] The Magistrate's Report appears to evaluate what should be the Rule 11 sanctions against plaintiffs' counsel.

5. There is no evidence at all that the amended complaint was presented for an improper purpose, or that Plaintiffs made no reasonable inquiry into the factual and legal contentions.

6. The Magistrate's Report does not accurately reflect the factual posture of the case. Plaintiffs brought six[3] claims in their amended complaint: The First, Third and Fifth were brought under the Individuals with Disabilities Education Act, which statute was interpreted by the court in CP v. Leon County School Board. Count II is a claim under the First Amendment, Count IV is a claim for discrimination under Section 504, and Count Five was a claim for Section 504

---

[3] There was a sixth claim for writ of mandamus.

retaliation in addition to under IDEA.  CP cannot be dispositive on the non-IDEA claims as IDEA explicitly states that "[n]othing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C. 12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C. 790 et seq.], or other Federal laws protecting the rights of children with disabilities,..." 20 U.S.C. 1415(l)   Further, Defendants did not move to dismiss any claim raised in the Amended Complaint  on the basis that it failed to state a cause of action under which relief could be granted: its 12(b)(6) motion was limited to dismissal on exhaustion grounds.

7. The court did not analyze whether attorney fees were the appropriate sanction and there is no analysis of any other option.

8. The court's summary acceptance that Plaintiffs' counsel's familiarity with CP meant filing the claims in this case automatically frivolous, does not acknowledge Plaintiffs' argument that the facts in CP differ materially from the facts in this case, nor that it is not frivolous to put forward a good faith claim for modification or reversal of existing law, or that Plaintiffs have been denied their statutory right to present testimony and evidence on their claims (20 U.S.C. 1415(h)(2). Plaintiffs object to the court's analysis of the *Thomas* factors as stated below:

   a. (1) "[w]hether the improper conduct was willful, or negligent" ---- the Report finds that it was it was at least knowing and sustains a high award, using as one basis the tone of the order granting sanctions.  This is

        insufficient to sustain such a finding.  Affidavit of Plaintiffs' counsel asserts that she made inquiries and had no reason to believe that CP was not distinguishable or that a good faith argument to modify or overturn CP could not be made.

b.    (2) "whether it was part of a pattern of activity, or an isolated event" === the court in this case suggests that the Eleventh Circuit's disagreement with CP's counsel's argument is sufficient to find a pattern of putting forth unsupported material in court documents is enough to warrant high sanctions.  The footnote does not allege any wrong doing by Plaintiffs counsel.   It does not say that the arguments were frivolous, just that the court believed some citations were not argued in sufficient depth and the court didn't find one argument to be on point.  And the Eleventh Circuit's original opinion (before the petition for Supreme Court cert) articulated it differently:

[fn.] 9. Appellant cites a number of cases on this issue in his appellate brief, but does not clearly articulate how they support his argument. For example, he relies on Burlington v. Dep't of Educ., 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985), for the proposition that school districts may not avoid their obligation to provide FAPE by simply invoking stay-put. However, Burlington does not support that proposition. In Burlington, the parents had unilaterally withdrawn their disabled child from public school, arguing that the school district's placement had denied FAPE. The parents prevailed in the administrative hearing and the placement approved by the hearing officer's decision became the "stay-put" IEP. The Court construed the hearing officer's decision as an agreement between the state agency and the parents to alter the educational placement under the stay-put provision, thus the parents were entitled to be reimbursed by the school board for the cost of the private education. Burlington does not compel the

>   School Board to agree with the parents' proposed placement apart from the judgment of a hearing officer. Thus, CP's reliance on Burlington is misplaced.  CP v. Leon County School Bd. Florida, 466 F.3d 1318, 1325  (11th Cir., 2006)

Further the *CP* footnote in either the original (above) or the version cited above, distinguish *Burlington* from *CP*: *Burlington* is a case in which the court granted an injunction to change the stay-put ---just like Plaintiff's claim in this case.  *Burlington* was cited for that in the ALJ's opinion in this case.  If Eleventh Circuit rejected its applicability to *CP*, that merely bolsters Plaintiffs' argument that injunctions remain available after *CP*.[4]

Incomplete or unpersuasive arguments which the original court did not catagorize as frivolous or warn against, cannot be misconduct that supports a "pattern".

c.   (3) "whether it infected the entire pleading, or only one particular count or defense" ----- The finding that dismissal of the entire complaint is evidence that the conduct affected the entire pleading is unsupported by the evidence.  The dismissal was solely on the basis of failure to exhaust.  It had nothing to do with *CP* or anything related to the Rule 11 arguments.  Indeed, JCSB didn't even move to dismiss on the grounds that the complaint failed to state a cause of action for which relief could be

---

[4]   Plaintiffs do not claim that the instant case is factually identical to Burlington.  They simply identify Burlington as one of several cases in which injunctions were granted to change stay put as requested in this case.

      granted.   And the entire case was dismissed, even though three of the claims were brought under statutes that were not interpreted at all by the *CP* court.

d.   (4) "whether the person has engaged in similar conduct in other litigation" — Plaintiffs' counsel denies that she has ever propounded any claim without good faith belief in is viability after reasonable inquiry.   The court's suggestion that mistakes in briefing or unpersuasive arguments are sufficient to support this prong cannot be consistent with the Rule which is supposed to discourage bath faith claims, not less than perfect brief writing.   (See 8(b) above.)

      The United States Supreme Court wrote,

" In applying [the criteria of "frivolous, unreasonable, or without foundation" used to determine whether it appropriate to award attorney fees to defendants in civil rights cases], it is important that a district court resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success. No matter how honest one's belief that he has been the victim of discrimination, no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable. ... Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit. *Christiansburg Garment Co v. Equal Employment Opportunity Commission*, 434 U.S. 412, 421, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978)

e.   (6) "what effect it had on the litigation process in time or expense" ---- The court uses circular reasoning.   The dismissal was unrelated to the merits of the claims, either the IDEA ones or the non-IDEA ones which

        could NOT have been controlled by *CP* in any case.    Further, the IDEA grants a specific statutory right to court review of administrative decisions.   Plaintiffs should not be punished for seeking review that is a matter of right.

f.    (7) "whether the responsible person is trained in the law" ---- This court awarded the sanctions against Plaintiffs.  But the Magistrate's Report says that Plaintiffs counsel alone is responsible for the conduct, without any facts.  The court did not take any evidence about who is responsible for the conduct.   PLB affidavit, paragraph 6, claims it.

g.    (8) "what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case".   When one considers that a successful Rule 11 motion essentially ruins the reputation of the attorney (in a way that gets their every move scrutinized as bad conduct as suggested by the second prong above), it seems illogical to assume that any attorney doing civil rights and special education law needs to pay any money to deter frivolous conduct.  The court cites no basis for deciding that any monetary sanctions are required to deter in this case.   The court's analysis of the financial issues  is faulty because Plaintiffs' nor plaintiffs counsel never had notice that they were supposed to disclose their finances.   They have each attached affidavits here showing that neither has the ability to pay the sanctions ordered.   Waiver

requires notice.[5]    Sanctions are not supposed to put those who must pay them out of business ---- doing so essentially bestows on School Districts the power to obliterate any challenge to their discrimination and denial of the civil rights to education, as they have in this case.

The Eleventh Circuit has held that a district court must consider financial ability in the award of sanctions.   They directed the district court to permit supplementation of the record with financial affidavits sufficient to permit consideration of financial ability.  *Baker v. Alderman*, 158 F.3d 516, 529 (C.A.11 (Fla.), 1998)

The court's suggestion that losing the appeal of the 12(b)(6 ) dismissal on exhaustion (not on the merits of the case and not on the issue raised in the Rule 11 motion) is a viable basis for assuming some bad intention and justifying greater sanctions is unsupportable.  Notably, the Eleventh Circuit denied JCSB's motion for fees on its successful appeal, which presumably it would not have done if it felt Plaintiffs appeal had no basis in law.   Failure to prevail on a claim, is not the same as making a frivolous one.   The court's suggestion that a reasonable sanction is more than Plaintiffs' counsel makes in her largely pro bono legal practice for the previous two years cannot be an appropriate result as intended under Rule 11.

---

[5] Plaintiffs' counsel would argue that waiver when her delay in filing these objections is caused by disability cannot be sustained either, if persons with disabilities are to receive Equal Protection under the law.

      h.    (9) "what amount is needed to deter similar activity by other litigants."

> "[T]he court's discretion to impose sanctions is not unrestricted, in that the sanction "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). Likewise, "[t]he conduct and resources of the party to be sanctioned are relevant to the determination of the amount of sanctions to be imposed." *Baker v. Alderman*, 158 F.3d 516, 528 (11th Cir. 1998) (citation omitted) *McDonald v. Emory Healthcare Eye Ctr.*, No. 10-10493, p. 5 (11th Cir., 2010)

9. The court's award of attorney fees as the sanction undermines the IDEA's limitations on the awards of fees.  It denies Plaintiffs the protection afforded them under the fee jurisprudence for Section 504 and First Amendment claims (as outlined in *Christiansburg Garment Co v. Equal Employment Opportunity Commission*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978)), which were in their amended complaint but have never been heard.

10. Plaintiffs object to the nature of the sanction.  In cases under IDEA and other civil rights statutes in which parents become the enforcement arm to preserve the civil rights of children, the court abuses its discretion in using sanctions that create incentives for governments to attempt fee shifting by Rule 11 motion. The court did not say why or how paying fees opposing counsel is warranted for effective deterrence or why the payment should be to JCSB rather than the court. See Rule 11( c)(4).

      Plaintiffs respectfully ask the court to reduce the sanction to a nominal amount and require it be paid to the court, rather than to the School Board.   " Sanction orders

must not involve amounts that are so large that they seem to fly in the face of common sense, given the financial circumstances of the party being sanctioned. What cannot be done must not be ordered to be done. *Miccosukee Tribe v. South Florida Water Management District*, 280 F.3d 1364, 1370 (11th Cir.2002)" *Martin v. Automobili Lamborghini Exclusive, Inc.*, 307 F.3d 1332, 1337 (11th Cir., 2002)

CERTIFICATE OF SERVICE

I certify that a copy of the foregoing document has been filed electronically and furnished thereby by Notice of Electronic Filing this 16th day of May 2014 to Bob L.Harris, Messer, Caparello & Self, PO Box 15579, Tallahassee FL 32317, bharris@lawfla.com.

Respectfully Submitted.
/s/ Rosemary N. Palmer
Rosemary N. Palmer
FL Bar #70904
5260 Pimlico Drive
Tallahassee FL 32309
(850) 668-9203
ATTORNEY FOR PLAINTIFFS

      Plaintiffs overlooked attaching the affidavits to the Objections filed yesterday. Counsel woke up at 2:20 AM realizing that and is now filing a corrected version with the attachments.

CERTIFICATE OF SERVICE CORRECTED OBJECTIONS TO MAGISTRATE'S
REPORT AND RECOMMENDATION [DKT.91]

I certify that a copy of the foregoing document including attachments that were not attached to the original filing has been filed electronically and furnished thereby by Notice of Electronic Filing this 17th day of May 2014 to Bob L.Harris, Messer, Caparello & Self, PO Box 15579, Tallahassee FL 32317, bharris@lawfla.com.

Respectfully Submitted.
/s/ Rosemary N. Palmer
Rosemary N. Palmer
FL Bar #70904
5260 Pimlico Drive
Tallahassee FL 32309
(850) 668-9203
ATTORNEY FOR PLAINTIFFS

IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF FLORIDA

PANAMA CITY DIVISION

| | |
|---|---|
| A.L., by P.L.B., and <br> P.L.B. for herself <br>      Plaintiffs <br> vs. <br> <br> Jackson County School Board, <br>      Defendant | ) <br> ) <br> )   Case No. 5:12-cv-299 RS-EMT <br> ) <br> ) <br> ) |

AFFIDAVIT OF PLAINTIFFS' COUNSEL

Comes now, Rosemary N. Palmer, being over eighteen and competent and says:

When, after a one year + delay in completion of a proceeding that should have taken 45 days under federal statute, PLB sought to find a way to address Jackson County School Board's refusal and failure to provide AL the special education and accommodations recommended by private experts, and asked if we could seek a court order compelling JCSB to prospectively do what they hadn't done, I reviewed the CP v. LCSB. As the attorney in that case I knew that it was NOT a case in which the student had sought an injunction. I also knew that the court in that case based its ruling in part on their perception that CP had invoked stayput, whereas in the instant case PLB had explicitly refused stay put because she had never agreed that any JCSB IEP had provided free appropriate public education for AL. I reviewed the cases in which courts had granted injunctions changing stay put, one of which was in the Northern District of Florida. I consulted an attorney with lengthy special education experience, to whom I disclosed all the facts in this case and who was familiar with CP. She advised me that it was her opinion that the instant case was sufficiently distinguishable from CP that a court could grant the injunction. She also opined that even if CP controlled, the decision was substantially inconsistent with the purpose of IDEA to assure that students have free appropriate public education, that she though a good faith case for modification or revocation could be made.

After JCSB moved for dismissal at the administrative proceeding using the same arguments that it argued in the federal court case, and gave notice of sanctions, I again reviewed the facts and determined that their was a good faith argument to be made for modification if CP applied. Then the Administrative Law Judge wrote a final order that did not dismiss on the merits, cited CP only in passing, and also cited a number of cases in which courts had granted injunctions changing the stay put, and told Plaintiffs to take

Page 1 of 3

the issue to a court. I had no reason to believe from the order that the ALJ believed CP to be dispositive, or that the federal court could not grant the injunctive relief my client wanted. And I did have good reason to believe that without an injunction, AL would pass the remaining high school years learning little, with the entire onus of his learning being addressed only by his mother. I reviewed the claim for denial of free appropriate public education because JCSB did not comply with IDEA procedures, knowing that the Supreme Court had opined in the 1970's that compliance with procedures was a fundamental requirement to assure FAPE for the student. I did not see anything in CP tha relieved the school district of its obligation to fully follow IDEA procedures. Further, I determined after review of the facts and the law that there was a basis for bringing claims for discrimination and retaliation for which CP could not be applied as CP did not interpret the statutes under which those claims arose. I believed before the administrative proceeding, and when I filed the appeal of the final order in federal court that CP didn't apply because its facts were different, and if it did, CP was inconsistent with the purpose of IDEA and should be overturned. I did not assert the claims for any improper purpose or in any bad faith. Instead my consideration was thorough and thoughtful and included seeking counsel of another attorney on two different occasions (the second being when JCSB filed the Rule 11 notice).

I am a sole practitioner who serves mostly indigent clients in special education and civil rights matters. In 2011, my legal business made $30,947. In 2012, my legal business made $39,601. In 2013, my legal business made $5201. My projected net income for 2014 is $5000, without the sanctions.. My disabilities prevent me from doing very much work, even when my clients can pay, which is rare.

I cannot now pay the overhead expenses to adequately serve my clients, who also have no other place to go as I am one of fewer than 30 private attorneys regularly practicing civil rights and special education law in the entire state of Florida. (There are another 30 or so practicing for non-profit firms.) I do not expect it to get better, as the Report and Recommendations, which I do not agree accurately reflects my practice, and certainly doesn't reflect the skill and diligence I strive to provide my clients, will (the order of sanctions already has) encouraged counsel for school districts to harass and threaten me in the course of my work with clients to get appropriate educational services for students.

I do not have financial resources to pay the recommended amount or any amount:. My current personal assets include a jointly owned homestead residence, and a business bank account that currently has less than $10,000, half of which is due the Internal Revenue Service, approximately $15,000 in an IRA, and approximately $6000 in jointly owned personal property. I did not realize that I should have filed an affidavit about my finances as part of challenging the school board's fee request for the Rule 11 sanctions decision making. This is the first time I have been through the process, and my disabilities regularly and severely impede any critical thinking and memory. The court did not ask or direct me to do so.

I am also too disabled to get a non-legal job at this point, assuming that the Report and Recommendations would not prevent me from ever being selected for one.  (See attached Doctor's note about accommodations.. Exhibit A.)

I have not ever mislead any court and am unaware of the court opinion the Magistrate's Report cites suggesting that I did.  I will be finding and reviewing it as soon as I feasibly can.

The recommendations will stop/have stopped me from serving clients whose children are languishing in inappropriate and ineffective educational programs that violate federal and state laws assuring that students with disabilities have equal opportunity to be educated, with little or no recourse over years of school neglect.

Plaintiffs' offer to settle was not an admission of ability to pay.  I do not have the ability to pay any amount and retain the ability to meet my financial obligations to clients and continue to practice law on even a minimal basis.  But rarely a week goes by without several parents calling for help.

I do not need any sanction to persuade me to improve.   I am always trying to do that.  The work I do is so important to the families and children and the public's need for successfully education populace.  I, and those who are also parent attorneys are already deterred on many levels from litigating against school districts when students with disabilities are not provided what they need to learn.

I am late in filing the objections to the Magistrates Report because my disability prevented me from doing the work during the time allowed and I was too disabled to even file the motion for extension, exacerbated by long hours trying to respond to all the demands of existing cases.

Pursuant to Fla. Stat. 92.525, and under penalties of perjury, I declare that I have read the foregoing affidavit and that the facts stated in it are true.

Executed this 12th day of May 2014

Rosemary N. Palmer
FL Bar #70904
5260 Pimlico Drive
Tallahassee FL 32309
(850) 668-9203
ATTORNEY FOR PLAINTIFFS

**CAPITAL PSYCHOLOGY CONSULTANTS**

227 East Virginia Street/Tallahassee, Florida 32301/(850) 224-5801/(850) 224-6459-fax

Marie Hume Guilford, Ph.D.                                                mariehumeguilfordphd.com
Licensed Psychologist
FL PY5748, GA2150

September 30, 2013

To Whom It May Concern:

Rosemary Palmer (DOB: 2/24/54) was seen in my office on September 24, 2013 for a psychological evaluation due to concerns about physiological symptoms she has been increasingly experiencing for the past several years. Results of the evaluation indicate that Rosemary is exhibiting symptoms of Anxiety Disorder Not Otherwise Specified, and she has a history of Posttraumatic Stress Disorder. Rosemary's current symptoms substantially limit her functioning in major life activities. She reports three episodes in the last three years that included extended periods (thirty days or more) of being unable to function. More acute episodes of anxiety are also noted that have caused limitations in her functioning. Medical causes of her physiological symptoms have been ruled out. Despite treatment she continues to exhibit symptoms including anxiety, emotional numbing, forgetfulness, and nausea. She also has acute episodes of anxiety, particularly in highly stressful situations (such as in the courtroom) where she experiences decreased peripheral vision, shakiness in her hands and legs that makes her writing almost completely illegible and makes it difficult for her to stand, and cognitive problems (forgetting, comprehension problems, difficulty tracking thoughts and conversations and responding appropriately).

Rosemary's history suggests a predisposition toward anxiety, exacerbated by trauma and stress. Rosemary's ability to cope with stress and anxiety seems to be increasingly taxed over the past few years leading to the current symptoms. She seems to alternate periods of normal functioning with episodes of dysfunction. In order to accommodate her episodes of dysfunction, certain work accommodations are requested, including; use of a memory aid in the courtroom and meetings, extended time when necessary to complete responses, rescheduling of hearings and responsibilities when unable to meet them, and the ability to remain seated in the courtroom when needed. It should be noted that because Rosemary's episodes are unpredictable, sometimes she may need to reschedule at the last minute.

Thank you for your consideration. Please call if you have any questions.

Sincerely,

_____
Marie Hume Guilford, Ph.D.
Licensed Psychologist/ PY5748

IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF FLORIDA

PANAMA CITY DIVISION

A.L., by P.L.B., and )
P.L.B. for herself )
      Plaintiffs )   Case No. 5:12-cv-299 RS-EMT
  vs. )
)
Jackson County School Board, )
      Defendant

AFFIDAVIT OF PLAINTIFF PLB

Comes now, Pamela Long-Bimberg, being over eighteen and competent and says:

1. I am the Mother of AL in this case. AL is disabled but he has never received the special education, related services and accommodations that private evaluators have recommended for him to have equal access and the opportunity to benefit from Jackson County School District's educational programs.

2. I am very disabled by medical and psychological effects of stress, for which I receive treatment. I have been largely incapacitated by personal circumstances and this for the last several months, and to a lesser degree over the past two-three years. I am now addressing the conditions with medication, and I am unable to successfully manage them regularly.

3. I cannot hold a job even if I could find one because of the disabling conditions. I haven't held gainful employment since AL was in middle school because of the time it takes to teach and support him myself, and, in the last few years, the incapacitating and increasing stress resulting from the advocacy and school district's response.

4. I do not have any resources to pay Rule 11 sanctions or attorney fees. I do not receive regular child support for my minor child because his father hasn't bee able to find work (I received $250 during the last six months). My nephew receives social security income which pays the rent. My husband contributes approximately $650 to the household accounts each month, which accounts are generally empty at the end of each month. I own half of my homestead property, for which I have a substantial mortgage. I have less than $4000 in personal assets, and none of it is cash.

Page 1 of 2

5. AL is eighteen, and still in school. He has not found work. He is expected to walk in graduation on June 3, 2014, but it will be a sham diploma because he does not have high school level skills, and his grades do not reflect his personal work and production. He wants to complete college. He has failed all college readiness testing except a single ACT test taken last year, on which he said he recognized test questions from an earlier test. He cannot pay any sanctions or legal fees.

6. I do not believe that Plaintiff's counsel has mislead this court or any other. I do not believe that any court can reasonably interpret IDEA to require that AL be denied free appropriate education for the entire time it has taken to resolve the claims in court. That is why I sought an injunction in 2012 — to prompt the school district to actually do something effective to address AL's needs.

7. I have admired and worked closely with Plaintiffs' counsel now for six years. I have found her to be a brilliant, caring, and completely honest attorney and a good human being. It hurts me to read the Magistrate's Report suggesting otherwise. Even though her disability has been quite crippling sporadically and more often over the last few years, and she has been unable to put out the wholly professional product that is her hallmark, her service to the children with disabilities is huge. It would be a really disservice to a lot of families to order sanctions that will prevent or reduce her helping parents advocate for their children with disabilities. I plead with the court not to order sanctions for trying to help me get AL he services he has long needed and been wholly denied by Jackson County School Board, such that the rest of his life has been permanently altered. I don't need sanctions to tell me to obey the court. I always try to do that anyway.

Pursuant to Fla. Stat. 92.525, and under penalties of perjury, I declare that I have read the foregoing affidavit and that the facts stated in it are true.

Executed this 12th day of May 2014

*[signature]*

PLB